**Mary E. TUCKER, Appellant,**

v.

**UNITED STATES POSTAL SERVICE.**

No. 81–2677.

United States Court of Appeals,
Third Circuit.

Argued March 29, 1982.

Decided April 12, 1982.

As Corrected April 19, 1982.

Kingsley A. Jarvis (argued), Norristown, Pa., for appellant.

Peter F. Vaira, Jr., U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Richard J. Stout (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Mary E. Tucker appeals from an order dismissing with prejudice her complaint against the United States Postal Service. The complaint seeks damages for personal injuries received in a motor vehicle accident on June 8, 1979. The Government moves to dismiss for lack of jurisdiction on the ground that plaintiff had failed to file a properly supported administrative claim. The trial court granted the motion without opinion. We reverse.

### I.

Shortly after the June 8, 1979 collision with a vehicle owned by the Postal Service, Mrs. Tucker's attorney wrote to the Postmaster of the Norristown, Pennsylvania Post Office putting the Service on notice that she was claiming damages, and requesting the appropriate claim forms. A standard Form 95 was returned, and by letter dated October 23, 1980 her attorney returned the completed forms. That form contains 21 questions, each of which was answered fully, including the amounts claimed for personal injury and property damage, the description of the accident, the names and addresses of witnesses, and the nature and extent of injury.

According to the instructions printed on the reverse side of Form 95, the government requires copies of medical reports from a claimant's physician detailing her injury, treatment, prognosis and expenses. (Instructions, Section (a)). These reports were not forwarded with the Form.

On November 13, 1980 Gale M. Nester, a Postal Service inspector, wrote to Mrs. Tucker's attorney, acknowledging receipt of the claim form. His letter advised:

> Please note that the instructions on the back of Standard Form 95 require itemized bills in support of both injury and damage claims.

The letter did not suggest that the itemized bills were a prerequisite to filing Form 95, or that the Form was in any way defective insofar as Mrs. Tucker's claim was concerned. It did, however, make reference to a possible subrogation claim by New Jersey Mfg. Insurance Company, the insurer of Mrs. Tucker's automobile. The Postal Service investigator noted:

> In addition, it is stated on that claim that New Jersey Mfg., Insurance Company paid the claimant $314.69 for automobile damage, and also paid medical bills through April 8, 1980. If this is the case, New Jersey Mfg. Insurance Company should claim the amount they paid, and claimant Mary E. Tucker should claim the balance. Otherwise, the Postal Service will require the insurance company to sign a subrogation receipt (copy enclosed), giving authorization to pay the total amount to the claimant.

> Extra claim forms are enclosed. Properly executed forms should be forwarded to this office for processing.

In context, it seems plain that the extra claim forms referred to in the last paragraph of the letter were intended for use by New Jersey Mfg. Insurance Company if it intended to assert a subrogation claim for the property damage and no fault medical payments it had made. The letter makes no suggestion that the Form 95 filed on Mrs. Tucker's behalf is defective.

In support of a motion to dismiss the government filed the affidavit of inspector Nester, which acknowledged receipt of Form 95 on October 29, 1980. The affidavit makes no reference to any defect in the Form, but alleges:

On November 13, 1980 I sent [Mrs. Tucker's attorney] a letter stating that itemized bills must be submitted to support injury and damage claims and pointed out that he failed to do so. I have never received the required support documentations and consequently, never had a chance to effectively evaluate Mrs. Tucker's claim.

Thus the sole basis on which the trial court could have acted in dismissing the complaint as time barred was the failure to forward itemized bills as requested in Inspector Nester's November 13, 1980 letter.

## II.

The governing law is found in three interrelated statutory provisions and several regulations dealing with claims under the Federal Tort Claims Act. The governing statute of limitations provides:

(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues....
(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401 (Supp.1981). Thus the critical event for satisfying the statute of limitations is presentation of a claim in writing to the appropriate agency within two years of the accident. There is, however, a requirement that the agency be given an opportunity to consider the claim, for 28 U.S.C. § 2675(a) (Supp.1981), provides:

An action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

The purpose of requiring initial filing of the claim with the appropriate Federal agency is to permit that agency to exercise the authority conferred in 28 U.S.C. § 2672 (Supp.1981):

The head of each Federal agency or his designee, in accordance with regulation prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States... *Provided*, That any award, compromise, or settlement in excess of $25,000 shall be effected only with the prior written approval of the Attorney General or his designee.

Acting pursuant to the rulemaking authority conferred in 28 U.S.C. § 2672 the Attorney General has promulgated regulations governing administrative claims adjustment, among them 28 C.F.R. § 14.2(a) (1980):

For purposes of the provisions of section 2672 of Title 28, United States Code, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in sum. certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

The Form 95 filed on Mrs. Tucker's behalf fully complies with 28 C.F.R. § 14.2(a). The regulations also provide for amendment of filed claims, and for the extension of the six month period for agency consideration fixed by 28 U.S.C. § 2675(a) in the event of amendment. 28 C.F.R. § 14.2(c)

(1980). Internal limitations on government settlement authority are detailed as well. 28 C.F.R. §§ 14.5–14.8 (1980). Immediately relevant are the regulations dealing with evidence and information which the claimant may be required to submit.

> In support of a claim for personal injury, including pain and suffering, the claimant *may* be required to submit the following evidence or information...

28 C.F.R. § 14.4(b) (1980) (emphasis supplied). The information which may be required from a personal injury claimant is set forth in the margin.[1] There are similar provisions dealing with death and property damage claims. 28 C.F.R. § 14.4(a), (c) (1980). Even a cursory examination of the designated information discloses that some of it may not even be available at the time the Form 95 must be filed. Plainly the purpose of the regulation is to afford to the agency, or to the Department of Justice if the claim exceeds $25,000, information required for an intelligent evaluation of the settlement potential of the claim. That the information designated in 28 C.F.R. § 14.4 is intended for this purpose, and not as a prerequisite to the satisfaction of the timely filing requirement of 28 U.S.C. § 2401(b), is confirmed by the permissive language "*may* be required to submit."

In *Adams v. United States*, 615 F.2d 284 (5th Cir. 1980), a Form 95 was, as here, completed and filed in compliance with 28 C.F.R. § 14.2 by the claimants in a medical malpractice action for prenatal care by Air Force physicians. The claims officer requested additional information including "itemized bills and expenses, a statement of future expenses and a signed medical authorization." Six months after the claim was filed the plaintiffs filed suit. The district court dismissed the complaint for lack of jurisdiction because the claimants had not fully complied with the regulations by furnishing the requested information. In an informative opinion the Court of Appeals reversed. The issues in *Adams v. United States* and in this case are identical, and since Judge Vance's analysis of the governing statutes and regulations can hardly be improved upon, we quote it.

## III.

The argument of the Air Force fails for two reasons. First, it erroneously assumes that the notice requirements of 28 U.S.C. § 2675 must be read in light of the settlement procedures established by 28 C.F.R. §§ 14.1–14.11, which were promulgated pursuant to section 2672. Such a reading clearly contravenes congressional intent. The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information. Second, even assuming that the Air Force correctly contends that section 2675 must be construed in light of section 2672 and 28 C.F.R. §§ 14.1–14.11, the Adams would not be barred from bringing their claim in federal court. To the extent that those regulations attempt to define section 2675 notice, they do so in section 14.2. The parties agree, however,

---

1. (1) A written report by his attending physician or dentist setting forth the nature and extent of the injury, nature and extent of treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity. In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency. A copy of the report of the examining physician shall be made available to the claimant upon the claimant's written request provided that he has, upon request, furnished the report referred to in the first sentence of this paragraph and has made or agrees to make available to the agency any other physician's reports previously or thereafter made of the physical or mental condition which is the subject matter of his claim.

(2) Itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses.

(3) If the prognosis reveals the necessity for future treatment, a statement of expected expenses for such treatment.

(4) If a claim is made for loss of time from employment, a written statement from his employer showing actual time lost from employment, whether he is a full or part-time employee, and wages or salary actually lost.

(5) If a claim is made for loss of income and the claimant is self-employed, documentary evidence showing the amounts of earnings actually lost.

(6) Any other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed.

28 C.F.R. § 14.4(b)(1)–(6) (1980).

that section 14.2 has been satisfied; the Adams have merely failed to comply with section 14.4(b). On either basis, therefore, the Air Force's position must be rejected.

## IV.

Congress' intent in enacting section 2675 is frustrated when the distinct functions of presenting notice and of engaging in settlement are confused in a way that impermissibly redefines the section 2675 notice requirement. The Air Force's argument confuses these two functions.

The relevant legislative history indicates two congressional purposes in requiring claimants to provide the relevant agency with notice of their claims. First, in enacting the notice requirement, Congress sought "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep.No.1327, 89th Cong., 2d Sess. 6 [hereinafter cited as S.Rep.], *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 2515, 2516. This efficiency purpose, however, accompanies a second purpose "of providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." S.Rep. at 5, *reprinted in* [1966] U.S.Code Cong. & Admin.News at pp. 2515–16.

The section 2675 requirement of filing a claim before instituting suit sought to bring the claimants' allegations to the immediate attention of the relevant agency. S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at 2518. Congress altered the status quo, therefore, because it considered the prior practice, under which a claimant first filed suit, then the United States Attorney referred his or her complaint to the agency, wasteful, time consuming and inequitable. That process artificially crowded the dockets of district courts with claims that would be settled once the United States Attorney conferred with the relevant agency. The situation thus unnecessarily consumed the time of United States Attorneys and subjected deserving plaintiffs to needless delays and attorneys' fees in processing their claims through the federal courts. S.Rep. at 5–6, *reprinted in* [1966] U.S.Code Cong. & Admin.News at pp. 2515–16.

Congress thought it preferable that claimants go first to the relevant agency. If the agency found settlement to be appropriate and if the case were settled at that point, considerable benefit would accrue to all parties concerned. If no settlement obtained, the claimant could still proceed with his or her claim in federal court.

> Final denial [of a presented claim] . . . includes instances where partial approval of a claim results in an offer unacceptable to the claimant and rejected by him. . . . However if the agency fails to act in 6 months, the claimant may at his option elect to regard this inaction as a final denial and proceed to file suit. It is obvious that there will be some difficult tort claims that cannot be processed and evaluated in this 6-month period.

S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518.

The two congressional purposes are adequately served if the prerequisite administrative claim is only the giving of "notice of an accident within a fixed time." S.Rep. at 7, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2517. Congress intended the section 2675 requirement of presenting notice to be construed in light of the notice traditionally given to a municipality by a plaintiff who was allegedly injured by a municipality's negligence. *Id.* Congress deemed this minimal notice sufficient to inform the relevant agency of the existence of a claim.

> The purpose of this notice [is] . . .—* * * to protect the [government] from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.

*Id.* (quoting 18 E. McQuillin, *The Law of Municipal Corporations* § 53.153, at 545 (3d ed. 1977)). This requisite minimal notice, therefore, promptly informs the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or by defense. In addition, as sec-

tion 2675(b) shows, this notice was to include a statement of damages.

An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. S.Rep. at 7, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2517. *See generally* 18 E. McQuillin, *The Law of Municipal Corporations* § 52.153 (3d ed. 1977); Annot. 62 A.L.R.2d 340, 341–51 (1958). This information alone allows the claimant to maintain a subsequent action in the district court following the denial of his or her claim by the agency or the passage of six months. Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim.

### V.

Section 2672 governs agency conduct, including administrative settlement and adjustment of properly presented claims, once notice has been given pursuant to section 2675. *See* S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at 2518. It facilitates settlement by authorizing the Department of Justice to promulgate regulations defining the settlement process for administrative claims and authorizing federal agencies to promulgate additional regulations and to "consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States." 28 U.S.C. § 2672. Thus, section 2672 creates a structure within which negotiations may occur. Noncompliance with section 2672 deprives a claimant only of the opportunity to settle his or her claim outside the courts.

The requirements of section 2675 and of section 2672 are, therefore, independent. Presentation of a claim and its settlement are distinct processes: "[section 2672] authorize[s] the head of each Federal agency to settle or compromise any tort claim presented to him [under section 2675]." S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518.

A claimant will ordinarily comply with 28 C.F.R. §§ 14.1–14.11 if he or she wishes to settle his or her claim with the appropriate agency. These requirements go far beyond the notice requirement of section 2675. Equating these two very different sets of requirements leads to the erroneous conclusion that claimants *must* settle with the relevant federal agency, if the agency so desires, and *must* provide that agency with any and all information requested in order to preserve their right to sue. This conclusion is not supported by relevant legislative history.

Congress explicitly recognized that, unlike routine cases, medical malpractice cases "involve difficult legal and damage questions," S.Rep. at 9, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2520, questions that are not always amenable to settlement, S.Rep. at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2518. Agencies were not intended to bar cases involving difficult issues from federal court by turning their difficulty against the claimants. *See Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515–16 (6th Cir. 1974); S.Rep. at 9, *reprinted in* [1966] U.S.Code Cong. & Admin.News at p. 2520. Section 2675 was meant to expedite the fair handling of ordinary tort cases in order to free the agencies to concentrate on more difficult cases.

A claimant's refusal to settle his or her claim will not deprive the federal court of jurisdiction, if the claimant has provided the statutorily required notice. Although many claimants will rationally elect to settle their claims, Congress clearly did not deem settlement mandatory.

615 F.2d at 288–91 (footnotes omitted). *See also Adams v. United States*, 622 F.2d 197 (5th Cir. 1980); *Crow v. United States*, 631 F.2d 28 (5th Cir. 1980). Judge Vance's analysis of the statutory and regulatory scheme is in our view correct, and we adopt it. The dismissal of the claim with prejudice was, therefore, improper.

The government contends that *Bialowas v. United States*, 443 F.2d 1047 (3d Cir.

960

1971), commits this circuit to an interpretation of the governing statutes and regulations different from that made by Judge Vance in *Adams v. United States, supra.* The holding in *Bialowas*, however, is a limited one. In that case, unlike this one, the Form 95 claim was itself deficient, and the reference in the opinion to the failure to file medical reports and bills must be read as no more than an indication that defects in the Form 95 had not been cured by the timely furnishing of supplementary information. 443 F.2d at 1050.

The government also relies on *Swift v. United States*, 614 F.2d 812 (1st Cir. 1980), in which the court approved the dismissal of a Federal Tort Claims action as premature when the claimant had failed to furnish requested evidentiary support. The holding in *Swift v. United States* is not authority for affirmance in this case, however, since the complaint was dismissed as premature, rather than, as here, with prejudice. Moreover, we have some question whether *Swift v. United States* is a correct interpretation of the statutes and regulations. The regulations provide explicitly for an enlargement of the six month period during which a federal agency may consider settlement, if an amended claim is filed. 28 C.F.R. § 14.2(c). There is no explicit provision for such an extension during the period in which the government is waiting for evidentiary support requested pursuant to 28 C.F.R. § 14.4. Moreover, since the timing of requests for such information is within the control of the government's claims agents, the *Swift* Court's ruling may have the effect of permitting the government, unilaterally, to enlarge the six month time period provided in 28 U.S.C. § 2675(a). The government can, once an action is filed, obtain evidentiary support for the claim through normal discovery, and can settle the case as easily as it can settle the claim. Thus no strong policy seems to require a dismissal and a refiling if no settlement is reached. We need not decide the issue presented in *Swift*, however, because it is clear from the dismissal with prejudice that the district court considered the action to be time barred rather than premature.

### VI.

The judgment appealed from will be reversed and the case remanded for further proceedings.