Joseph M. PASCALE

v.

UNITED STATES of America
(D.C. Civil No. 92–00695).

Joseph M. PASCALE

v.

James S. KALAFATIS; United States of
America; Department of the Treasury;
United States Secret Service; John Doe
(a fictitious name) (D.C. Civil No. 92–
01351).

Joseph M. Pascale, Appellant.

No. 92–5563.

United States Court of Appeals,
Third Circuit.

Argued May 6, 1993.

Decided July 8, 1993.

Jeffrey W. Warden (Argued), Bongiovanni, Collins & Warden, P.A., Denville, NJ, for appellant.

Michael Chertoff, U.S. Atty., Suzanne R. Dyer (Argued), Asst. U.S. Atty., Anthony J. LaBruna, Sp. Asst. U.S. Atty., Newark, NJ, for appellee.

Before: SLOVITER, Chief Judge, COWEN and LEWIS, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

This case requires us to consider the interaction of the two statutory provisions governing timely filing of claims under the Federal Tort Claims Act: 28 U.S.C. § 2401(b) (1988), which requires a claimant to file suit within six months of the agency's final denial of the claim, and 28 U.S.C. § 2675(a) (1988), which authorizes a claimant to treat inaction by the agency for six months as a final denial. We conclude that the district court erred by collapsing the two provisions, and we will vacate

the dismissal of plaintiff's suit as time-barred and remand.

## I.

### Facts and Procedural History.

Plaintiff, Joseph M. Pascale, who was injured on March 12, 1990 when his motor vehicle was involved in a collision with a vehicle driven by a Secret Service Agent employed by the United States Department of the Treasury, filed an administrative claim (Standard Form 95) with the United States Secret Service on April 18, 1990. The Secret Service did not act on his claim and thus, on July 15, 1991, fifteen months after filing the claim, plaintiff filed a federal complaint deeming the agency's inaction a final denial of the claim under 28 U.S.C. § 2675(a) (1988). He named the driver, the United States, the Department of the Treasury, the Secret Service, and a John Doe defendant, alleging that the negligence of the driver caused him severe and painful permanent injuries.

Plaintiff served the United States Attorney and the Attorney General of the United States with the summons and complaint on November 21 and November 29, 1991, respectively. On January 31, 1992, six and a half months after the complaint was filed, the government moved to dismiss the complaint because plaintiff had failed to effect service of process within 120 days of filing as required by Fed.R.Civ.P. 4(j). Conceding the inadequacy of the service,[1] plaintiff consented to a dismissal without prejudice on February 26, 1992. In the interim, plaintiff refiled this federal action on February 18, 1992, naming the United States as sole defendant. Plaintiff had also filed a state court action on February 11, 1992 against the driver, which was removed and consolidated with the federal action after the government certified that the driver was acting within the scope of his employment at the time of the accident.

The government moved to dismiss the consolidated cases under Fed.R.Civ.P. 12(b) on the ground that plaintiff's action was time-barred under 28 U.S.C. § 2401(b) (1988), which requires a claimant to file a federal action within six months of a "final denial" by the federal agency considering the administrative claim. The district court granted the government's motion on the ground that plaintiff filed his second complaint more than six months after he deemed the agency's inaction a "final denial" by filing his first complaint.

The district court held that plaintiff "triggered" the six-month period when he filed his first lawsuit, and that his second suit was therefore time-barred. The court acknowledged the split of authority in the case law, but concluded that the legislative history and statutory purposes of the two provisions favored the government's position. The court also relied on a decision by another court in the same district, *McKenith v. United States*, 771 F.Supp. 670 (D.N.J.1991), which dismissed as time-barred a second-filed action in an identical situation.

■ Plaintiff filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we exercise plenary review over the district court's dismissal of a complaint. *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700 (3d Cir.1991).

## II.

### Statutory Provisions

The Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988 & Supp. III 1991), enacted in 1946, permits the government to be sued for the negligence of its employees under the same circumstances and to the same extent as a private party. The Supreme Court has described the Act as "mark[ing] the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950).

---

1. In *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 879 n. 6 (3d Cir.1987), we noted that courts have unanimously held that "dismissal for service made more than 120 days after filing is required under the rule absent a showing of good cause." Plaintiff had served the driver and the United States Secret Service within 120 days of filing the complaint, but that did not suffice as proper service on the government under Fed.R.Civ.P. 4(d)(4).

In 1966, the Act was amended to require all injured persons to present their claims to the federal agency that employed the alleged tortfeasor before filing suit. Federal Tort Claims Act, Pub.L. No. 89–506, 80 Stat. 306 (1966). The new procedures were intended to ensure that "meritorious [claims] can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2515, 2517 [hereinafter *1966 Senate Report*].

■ One of the amended provisions sets out the exhaustion requirement:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail....

28 U.S.C. § 2675(a) (1988).

Most important to the present case, section 2675(a) also contains a "deeming" provision, which gives a claimant the option to treat the agency's failure to act as a final denial of the claim:

The failure of an agency to make final disposition of a claim within six months after it is filed *shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....*

*Id.* (emphasis added).

The other amended provision relevant here contains the applicable statute of limitations and provides:

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun *within six months after the date of mailing, by certified or registered mail, of notice of*

*final denial of the claim by the agency to which it was presented.*

28 U.S.C. § 2401(b) (1988) (emphasis added).

It is undisputed that plaintiff timely filed a satisfactory administrative claim within two years of the accident. *See Bialowas v. United States,* 443 F.2d 1047, 1049–50 (3d Cir. 1971). The sole question in this case is whether plaintiff's second suit was untimely because it was filed more than six months after he filed his first suit. In other words, when plaintiff filed his first suit under section 2675(a) (which authorizes a claimant to deem the agency's inaction a "final denial of the claim"), was that the equivalent of a "final denial" for purposes of section 2401(b), which requires suit to be brought within six months of the agency's "final denial"?

### III.

### *Discussion*

### A.

### *Statutory Language*

The government points to no statutory language that supports its position that section 2675(a) and section 2401(b) are meant to be read together for purposes of ascertaining the meaning of "final denial" in section 2401(b). In fact, the statutory language is to the contrary. The relevant sentence of section 2675(a) authorizes the claimant to deem six months of inaction by the agency as a final denial "for purposes of this section." It is difficult to imagine language that could more expressly limit the application of the deemed "final denial" to section 2675(a) than that which Congress used. Both provisions were amended in 1966; if Congress had intended the six-month statute of limitations in section 2401(b), which applies when an agency issues a written final denial, to apply also when a claimant has exercised the deeming option under section 2675(a), we can assume it would have so stated.

■ The premise of the government's position is that the "final denial" language of section 2401(b), which requires that a federal action be filed within six months of any "final denial," encompasses both a written agency

denial and a section 2675(a) deemed final denial. This interpretation is contradicted not only by the express limitation in section 2675(a), but also by statutory language in section 2401(b). Section 2401(b) provides that the federal action must be filed "within six months after the date of *mailing, by certified or registered mail, of notice of final denial* of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b) (1988) (emphasis added). This clearly is limited to final denial by the agency. We see no reason to add to section 2401(b) the words "or within six months after the plaintiff has deemed the claim finally denied under section 2675(a) by filing a complaint."

In short, we see no basis under the plain language of the statute to apply the six-month limitation of section 2401(b) to a claimant who deems an administrative claim denied, files suit under section 2675(a), and, for an unrelated reason, must refile that complaint.

### B.

### *Legislative History*

An examination of the legislative history supports this conclusion. As noted above, the Federal Tort Claims Act was enacted in 1946 to waive the sovereign immunity of the United States for private tort actions. Legislative Reorganization Act of 1946, Pub.L. No. 601, 60 Stat. 842. Under the predecessor of the provision that is now section 2401(b), suit had to be filed within one year of the accrual of the claim. 28 U.S.C. § 942 (1946) (repealed).[2] In addition, small claims against the government, i.e., those for less than $1,000 in money damages, could be presented to the affected agency for possible early settlement without suit provided they were presented within one year of their accrual. 60 Stat. at 843–45.[3]

If the claimant chose to present the claim to the agency, the time to institute suit was extended for six months "from the date of mailing of notice to the claimant by such Federal agency as to the final disposition of the claim...." 60 Stat. at 845. However, at all times the claimant retained the power to withdraw the claim on fifteen days' written notice and file suit in federal court. 60 Stat. at 844; *see* 28 U.S.C. § 2675(b) (1964) (amended 1966).

Experience with administrative settlement of small claims and reports of settlements in private tort litigation led Congress in 1966 to impose an administrative exhaustion requirement for claims of all sizes in order to foster prelitigation settlement. Current section 2675(a) gives the agency a minimum of six months to consider the claim before allowing the claimant to resort to the courts. *1966 Senate Report*, at 2518.

There were several purposes behind the administrative exhaustion requirement. First, as this court recognized in *Tucker v. United States Postal Service*, 676 F.2d 954 (3d Cir.1982):

> Congress sought "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States."

*Id.* at 958 (quoting *1966 Senate Report*, at 2516). The six-month waiting period before claimants could file suit in federal court would "permit settlement of more tort claims at the agency level than would be possible if the filing of administrative claims were merely optional." *Improvement of Procedures in Claims Settlement and Government Litigation: Hearings Before Subcomm. No. 2 of the House Comm. on the Judiciary on H.R. 13650, 13651, 13652, and 14182,* 89th Cong., 2d Sess. 16 (April 6, 1966) (statement of Assistant Attorney General John W. Douglas).

Settlement was also fostered by amending section 2672 (the settlement provision) to remove the monetary limit on claims subject to compromise, except that for claims over $25,000 the Attorney General's approval was required. *1966 Senate Report*, at 2519–20; *see* 28 U.S.C. § 2672 (1988 & Supp. III 1991).

---

**2.** The one-year limitation was lengthened to two years in 1949. Act of April 25, 1949, Pub.L. No. 55, § 1, 63 Stat. 62.

**3.** In 1959, the $1,000 limit was raised to $2,500. Act of Sept. 8, 1959, Pub.L. No. 86–238, 73 Stat. 471, 471–72.

Second, the 1966 amendments were designed to

> provid[e] for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with [it].

*1966 Senate Report*, at 2515–16. We recognized the importance of this goal in *Tucker*, where we held that a Form 95 was sufficient to satisfy the exhaustion requirement, despite the claimant's failure to forward itemized medical bills to the agency. 676 F.2d at 960.

Finally, Congress sought to decrease the cost of processing claims, whether at the administrative or the judicial level. *1966 Senate Report*, at 2524–25 (statement of Attorney General Nicholas Katzenbach). In all, Congress believed greater efficiency would be achieved by increasing the involvement of the agencies with the most experience handling administrative claims, and by decreasing the number of stale claims presented. *Id.* at 2525 (amendment will "encourag[e] trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh").

Neither section 2675(a) nor section 2401(b), as described in the section-by-section analysis of the Senate Report, refers to the other. There are two references to the deeming option of section 2675(a), and neither refers to a time limitation. The Report states:

> After the claim has been presented to the agency and 6 months passes without final disposition of the claim, the claimant is expressly given the option to consider the claim as denied and to file suit.

*1966 Senate Report*, at 2521; *see also id.* ("after 6 months without final action, the individual at his own option can deem the claim to be finally denied and be free to commence suit").

The amendments to section 2401(b) containing the statute of limitations are described on the next page of the Senate Report, where the requirement of mailing "by the agency" is specifically mentioned:

> The amendments have the effect of simplifying the language of section 2401 to require that a claimant must file a claim in writing to the appropriate Federal agency within 2 years after the claim accrues, and to further require the filing of a court action within 6 months of notice by certified or registered mail of a final decision of the claim by the agency to which it was presented.

*Id.* at 2522. Just as the language of section 2401(b) does not refer to a generic "final denial" but rather mentions a written final denial from the agency, the description in the Senate Report also refers to the filing of a federal complaint within six months of "notice by certified or registered mail" of a final decision.

The legislative history thus shows no intent by Congress to read the time limitation of section 2401(b) into section 2675(a). On the contrary, Congress was clearly aware of both provisions at the time the amendments were made and evidenced no intent to collapse the two provisions.

### C.

#### *Case Law*

Only a few courts have considered the interplay of these two statutory provisions. In *Hannon v. United States Postal Service*, 701 F.Supp. 386 (E.D.N.Y.1988),[4] the court held that a plaintiff could refile a federal action dismissed under Rule 4(j), relying on the language of section 2675(a) that gives a claimant the option to file suit "at any time" after six months of agency inaction, and the provision in the same section that filing of the suit is deemed a final denial "for purposes of this section." The court found it "illogical, if not inequitable" to construe to the detriment of plaintiffs a provision designed to benefit them. *Id.* at 389.[5]

---

**4.** We reject the government's suggestion that the force of the reasoning in *Hannon* is diminished because the court may have raised this statutory issue *sua sponte*. *See* 701 F.Supp. at 388 n. 5. The issue was carefully considered by the court, and the analysis stands irrespective of how the issue was raised.

**5.** Although plaintiff represents in his brief that *Hannon* was affirmed by the Second Circuit, it was the dismissal of the first complaint in *Hannon* that was affirmed. *See Hannon v. United States Postal Serv.*, No. 87-6033, 849 F.2d 1467 (2d Cir.1988) (table).

The reasoning of *Hannon* was adopted by the Ninth Circuit in *Parker v. United States,* 935 F.2d 176 (9th Cir.1991). In *Parker,* the court held that the district court erred in dismissing as time-barred the refiled complaint of a plaintiff who had waited three years before filing his first federal action which was dismissed without prejudice. The court stated:

> By its express terms, this second limitations period [of section 2401(b)] applies only when the agency has made a final disposition of the claim and notified the claimant by mail. The six month period does not begin to run until the agency has notified the claimant of a final denial in accordance with section 2401(b).

*Id.* at 177.

Thus both the *Hannon* and *Parker* courts held that under the plain statutory language, a deemed denial cannot be imported into section 2401(b), which defines a "final denial" only as a written notification from the agency.

The district court in this case rejected these authorities, relying instead on the contrary reasoning of *McKenith v. United States,* 771 F.Supp. 670 (D.N.J.1991); *see also Marcone v. United States,* No. 91–2481, slip op. at 10 (D.N.J. filed Sept. 25, 1992) (unpublished decision following *McKenith* ). The *McKenith* court concluded that "the six month statute of limitation provision not only applies to claimants who have actually received a final denial from a federal agency but also applies to those who have deemed an agency's inaction a constructive final denial of their claim." 771 F.Supp. at 672. The court stated that the reference in the singular to "the option" in section 2675(a) means that the claimant has only one opportunity to deem an agency's inaction a final denial of the claim. *Id.* at 672 n. 1.

We do not find that reasoning persuasive. There is no statutory language indicating that a claimant can only deem a claim denied once. The "option" language appears in the phrase which provides that a claim can be denied "at the option of the claimant *any*

*time thereafter,*" and refers only to the timing of claimant's decision to file suit, not to any arbitrary limit on the number of times the deeming option can be exercised. Indeed, the government concedes that a claimant may file more than one suit against the government, so long as the later suits are filed within six months of the first such suit. Brief of Appellee at 9. Even the Seventh Circuit, which has in dictum interpreted the six-month limitation in section 2401(b) to apply when the plaintiff exercises her deeming option, held that a second complaint filed within six months of the first could not be dismissed. *Miller v. United States,* 741 F.2d 148, 150–51 (7th Cir.1984).

Pervading the district courts' opinions here and in *McKenith* is the view that the claimant's predicament came about as a result of his, or more accurately his counsel's, failure to serve the defendants properly. However, Rule 4(j), the rule that was not observed, does not provide that failure to effect service within 120 days precludes filing another suit. In fact it provides that dismissal is "without prejudice," thereby expressly anticipating the possibility of a second suit.

Nor is such a plaintiff placed in an unduly "favorable position," as the *McKenith* court believed. 771 F.Supp. at 672. The plaintiff, who waited fifteen months for an agency disposition of his claim, must retain and pay counsel for filing two suits and will be subjected to the attendant costs and delays of federal civil litigation. *See 1966 Senate Report,* at 2515–16. We see no reason in the statute or Rule 4(j) why the government should be able to benefit from the fortuity that a plaintiff who patiently waited for agency action misfiled his first complaint. *Cf. Mack v. United States Postal Serv.,* 414 F.Supp. 504, 507 (E.D.Mich.1976) (dismissal is "harsh for the claimant whose faith in the administrative process leads him to wait more than six months for the resolution of his claim").

It would be ironic if a provision designed to permit a claimant to pursue her remedy where the appropriate federal agency is dilatory in making a determination of her claim would, instead, defeat her claim where the government delays in moving to dismiss her claim under Fed.R.Civ.P. 4(j) or where the court does not make an immediate disposition of such a motion, thus making it impossible to refile the action within six months.

*Hannon,* 701 F.Supp. at 389.

The government in this case does not claim any prejudice in fact. Although the United States was not properly served within 120 days, it received prompt notice of the claim and it was arguably aware of the suit from as early as August 1991 when the driver and the United States Secret Service were served with the summons and complaint. It was certainly aware of the case when the United States Attorney and the Attorney General were served in November 1991. While there is no basis to believe that the government deliberately waited until the expiration of six months before filing its motion to dismiss the plaintiff's complaint for untimely service, we note in passing that had it moved to dismiss promptly, plaintiff could have refiled the complaint before the end of the six-month period that the government believes governs. We do not decide the case on that basis, *cf. Kelley v. United States,* 568 F.2d 259, 262 (2d Cir.) ("the Government [sh]ould not lull plaintiffs into a false sense of security by waiting until plaintiffs' time to file an administrative claim ha[s] expired and thereupon move . . . to dismiss [the action]"), *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978), because our holding is based firmly upon our interpretation of the applicable statutes. We leave any policy change to Congress.

The district court wrote that the "clear purpose" of these statutes would not be furthered by "permitting a party to file and continually refile suit. . . ." App. at 35. The government expressed a similar fear at oral argument and in its brief. *See* Appellee's

Brief at 12 ("[T]he failure of a Government agency to issue a denial may not be interpreted as a standing invitation to the plaintiff repeatedly to file civil actions."). In light of the sparse authority that we have located which addresses the intersection between these statutes when a plaintiff's federal action is dismissed without prejudice, we question whether fear of multiple suits is justified. In any event, we think it hardly likely that a plaintiff or plaintiff's attorney, however uninformed, will repeatedly err in serving the complaint. The government has not suggested there is any other situation in which this issue could arise.

Moreover, those courts that have considered the issue have noted that the agency can start the section 2401(b) clock running at any time by mailing a final denial of the claim. *See, e.g., Conn v. United States,* 867 F.2d 916, 921 (6th Cir.1989) ("To avoid problems, an agency can simply deny the claim . . . and thereby cause the six-month period to begin to run."); *Hannon,* 701 F.Supp. at 389 n. 7 (agency "remains free to issue a formal denial at any time, thus protecting itself from any prejudice due to the staleness of the claim and the attendant loss of evidence"); *Mack,* 414 F.Supp. at 507 ("[I]t is within the power of the agency to start the running of the six-month period at any time by sending a written notice of denial.").[6]

Our decision does not, as the government claims, operate to protect bungling attorneys, who will surely be sued for malpractice if they fail to file the complaint in sufficient time. Rather, we interpret the statutes in light of the congressional purpose in amending the Federal Tort Claims Act in 1966 to provide more fair and equitable treatment to claimants, some of whom may be proceeding *pro se. See 1966 Senate Report,* at 2515–16.

■ It may be surprising that Congress chose not to impose a conventional statute of limitations for suits filed under the deeming provision of the Federal Tort Claims Act. As long as a claimant files an administrative claim within two years of its accrual and the

6. Even the district court in the instant case, without acknowledging the inconsistency in its position, wrote that "an agency can easily deny a claim and begin the six-month period of limita-

tions if it is concerned that a claimant will file suit numerous years after the claim could have been deemed denied." App. at 35 n. 6.

agency does not send notice of final denial, the claimant may wait indefinitely before filing suit. *See Boyd v. United States,* 482 F.Supp. 1126, 1130 (W.D.Pa.1980) ("plaintiff [who waited sixteen months after filing claim with agency] was entitled to treat [the agency's] failure [to deny his claim] to be a final agency action *at any time thereafter* and is not barred by the statute of limitations in § 2401(b)") (emphasis added); *see also Mack,* 414 F.Supp. at 507 ("this interpretation may seem to be the equivalent of no limitation of action, [but] it appears to be the most reasonable reading of the statutory scheme"); *see also McCallister v. United States ex rel. United States Dep't of Agric.,* 925 F.2d 841, 843–44 (5th Cir.1991) (per curiam) (following *Boyd* and *Mack* ); *Taumby v. United States,* 919 F.2d 69, 70 (8th Cir. 1990) (same); *Conn,* 867 F.2d at 921 (same); *Leonhard v. United States,* 633 F.2d 599, 624 n. 36 (2d Cir.1980) (dictum), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

In *Stahl v. United States,* 732 F.Supp. 86 (D.Kan.1990), one of several cases considering whether there is a limit on the time a claimant may wait before filing suit, the court rejected the suggestion that section 2401(b) is the source of a time limit on a claimant's ability to file suit based on an agency's inaction. We agree with the court's conclusion that

> the government agency's failure to issue a decision within six months after a claim is filed cannot serve as notice of a final denial as contemplated in Section 2401(b). *Section 2401(b) specifically states that the six month statute of limitations begins to run only when the government agency sends notice of final denial by certified or registered mail.* No such notice was ever sent in this case. Therefore, the six month limitation period was never activated.

*Id.* at 88 (emphasis added).

The government concedes that there is no limit, provided by section 2401(b) or otherwise, on a claimant's time to deem the claim denied. Although it originally had taken the position, accepted by the Eighth Circuit in *Taumby v. United States,* 902 F.2d 1362, 1366 (8th Cir.1990), that a cause of action must be filed within a "reasonable time after the appropriate agency has had six months to consider the claim," that opinion was vacated. In the new opinion, substituted at 919 F.2d 69 (8th Cir.1990), the court noted that the Department of Justice "expresse[d] regret that it misstated the United States' position before th[e] panel" in the first case. *Id.* at 70. We find it highly significant that the United States implicitly conceded, albeit in a somewhat different context, that these two statutory provisions are not meant to operate together.

We recognize that because the Federal Tort Claims Act represents a waiver of sovereign immunity, its provisions should be strictly construed. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 94, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990). However, "[t]hat the Act ends the immunity defense does not furnish a ground for niggardly interpretation of [it]." *Kelley,* 568 F.2d at 262. We find that both the statutory language and the legislative history support our holding that the six-month statute of limitations in section 2401(b) for filing suit after a final agency denial does not apply to plaintiff's filing of a complaint under section 2675(a) after six months of agency inaction, and thus his second complaint is not time-barred.

### IV.

### *Conclusion*

For the foregoing reasons, we will vacate the order of the district court and remand for further proceedings consistent with this opinion.