Hawa Abdi JAMA, Abu Bakar, Joseph Ackah, Charles Addai, Benjamin Anang, Dweku Awotowe, Yvetee Nsukami Badjoko, Gonzalo Crespo, Joseph Debrah, Cecilia Kou Jeffrey, Anantharajah Jeyakumar, Abraham Kenneh, Nagendran Manoharan, Thomas Kyeu Manu, Dennis Raji, Shamimu Nanteza, Agatha Serwaa, Jasmel Singh, Folorunsho Wasiu Alibi and Sarah Tetteh Yower, Plaintiffs,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Correctional Services Corporation (formerly "Esmor Correctional Services Inc."), David McLean, Norman Uzzle, Michael D. Rozos, Earline Boyer, Alan Freiss, John Doe Silva, James Slattery, Aaron Speisman, Willard Stovall, John Lima, James Pouland, Diane McClure, Richard Staley, Kevin T. Brodie, Irving Brown, Catrina Clark, Leonard Eady, John Doe Edider, John Doe Feder, Frank Figel, Luis Garcia, Darrell Gill, Winfred Hawkins, John Doe Hayes, William Higgs, Isaiah Hughes, Dorian Hunter, Willie O. Hunger, Michael Jackson, Phillip Johnson, Jon Doe Kutz, Michael Melendez, Jane Doe Michelle, John Doe Mo-

hammed, Okay Nkenke, John Doe Phil, Robert Snead, Corey Stradford, Michael Tate, Augustus Vanderpuye, William Wallington, Norman Williams, John Doe Wilson and John and Jane Does 1–50, Defendants.

Civ. No. 97–3093 (DRD).

United States District Court, D. New Jersey.

Oct. 1, 1998.

Frank Askin, Penny M. Venetis, Rutgers Constitutional Litigation Clinic, Rutgers Law School, Newark, NJ, Michael J. Holden, Martin Glenn, Tina Antonakakis, O'Melveny & Myers LLP, Citicorp Center, New York City, for Plaintiffs.

Frank W. Hunger, Assistant Attorney General, Faith S. Hochberg, United States Attorney, Susan C. Cassell, Assistant U.S. Attorney, Deputy Chief, Civil Division, Newark, NJ, Theodore C. Hirt, Lucinda A. Love, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for defendant INS.

Edward R. Murphy, Murphy and O'Connor, Haddonfield, NJ, A. David Carlson, Nathan M. Rymer, Carlson & Smith, P.C., Houston, TX, for defendants INS Officials.

Daniel V. Gsovski, Chase Kurshan Suhr Herzfeld & Rubin, (a partnership including a professional corporation), Newark, NJ, for defendants Correctional Services Corporation (sued herein as "Esmor Correctional Services, Inc.") and other Esmor defendants.

### OPINION

DEBEVOISE, Senior District Judge.

Plaintiffs, aliens who sought asylum and who were detained at a facility in Elizabeth, New Jersey, brought this action against defendants Correctional Services Corporation, a number of its officers and employees, the United States Immigration and Naturalization Service ("INS"), and various INS officials, alleging mistreatment while detained in that facility and asserting claims under federal, state and international law. The INS moves to dismiss the complaint under Fed. R.Civ.P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment.

Defendants Alan Freiss, Norman Uzzle, Mike Rozos, Earline Boyer and David McLean ("INS officials") have joined in the INS's motion. The United States has been substituted as a defendant as to the claims

against the INS officials based on New Jersey state law and the New Jersey constitution (counts 14, 20, 24, and 27–29). The INS officials argue for dismissal of most of the remaining claims—those based upon the Religious Freedom Restoration Act (count 22); the Thirteenth Amendment to the United States Constitution (count 23); the Fair Labor Standards Act (count 25); and the International Covenant on Civil and Political Rights, customary international law, and the Alien Tort Claims Act (counts 15–18, 21, 26, and 30)—leaving without challenge only claims invoking the First and Fifth Amendments to the United States Constitution (counts 19 and 13 respectively).

Defendants Correctional Services Corporation (formerly known as Esmor Correctional Services, Inc., hereinafter "Esmor") and those of its present and former officers ("Esmor officers") and employees ("Esmor guards" or "guards") who have been sued in this action (collectively "Esmor defendants") also join in the motion and argue for dismissal of several of the claims asserted against them—those founded upon the Fair Labor Standards Act (counts 44, 62, and 80); the Thirteenth Amendment (counts 42, 60, and 78); the New Jersey Constitution (counts 32, 39, 43, 51, 57, 61, 69, 75, and 79); the Religious Freedom Restoration Act ("RFRA") (counts 40, 58, and 76); the Alien Tort Claims Act ("ATCA"); and the International Covenant on Civil and Political Rights ("ICCPR") and customary international law (counts 34–37, 41, 45, 49, 52–55, 59, 63, 67, 70–73, 77, 81, and 84). Count 51 was not separately listed in the Esmor motion, but the argument clearly embraces it.

### BACKGROUND

#### I. *The Amended Complaint*

Plaintiffs are alien asylum seekers who were detained at a facility in Elizabeth, New Jersey, which was run by Esmor and staffed by its employees under a contract with the INS. The allegations of the amended complaint can be summarized as follows: Every moment of plaintiffs' detention was filled with abuse. They could not escape from these abuses even in their dreams, as they were not permitted to sleep—bright lights shone on them 24 hours a day, and guards woke them up just to taunt them.

Esmor's layout contributed to and exacerbated the unrelenting abuses defendants inflicted on plaintiffs. Esmor was separated into several dormitories which were filthy and constantly smelled of human waste and other noxious odors. *Complaint* at ¶ 44. Between twenty and forty asylees were packed into each room, which lacked natural light, telephones, and recreational materials *Id.* at ¶ 43. The rooms were separated from each other and the communal hallways by thick dark glass so that persons in the halls could peer into the dormitories. *Id.* The dorms were not cleaned by defendants and were filthy. *Id.* In response to plaintiffs' repeated requests for cleaning materials, the guards beat plaintiffs. *Id.*

The shower and toilet in each dormitory were in the same room as the eating and sleeping areas, forcing the plaintiffs to eat meals only inches away from the bathroom areas. *Id.* at ¶ 44. Thus, as they ate, plaintiffs could observe and smell other detainees using the toilets. *Id.* Additionally, the bathroom facilities had no curtain or divider—allowing the other asylees, guards and anyone passing in the hallway to observe the naked bodies of the plaintiffs who were using the toilets and taking showers. *Id.* at ¶ 44. This was traumatic, humiliating and degrading to many detainees particularly the women, many of whom had never exposed their bodies to anyone before. *Id.* at ¶ 45. When women detainees showered, guards made crude sexual comments about their bodies. This exacerbated the women plaintiffs' feelings of shame and humiliation. *Id.*

In a variety of ways defendants physically, mentally and sexually abused plaintiffs. In addition to beating them they yelled racial and ethnic epithets at them such as "African Monkeys" from the "jungle". *Id.* at ¶¶ 59, 67. The guards woke plaintiffs before sunrise and forced them to stand facing a wall, with their legs spread, for up to an hour at a time. *Id.* at ¶ 58. Upon searching male plaintiffs' genital areas the guards forcefully yanked their genitals causing severe pain. There was inappropriate touching of both male and female plaintiffs. *Id.* ¶¶ 70, 72.

Sexual favors were sought of female plaintiffs. *Id.* ¶ 71.

Defendants deprived plaintiffs of clothing and personal hygiene necessities. *Id.* at ¶ 51. Changes of clothing were infrequent and the clothing provided was often filthy and could not be worn. *Id.* at ¶¶ 49, 50, 52.

Defendants served spoiled food and insufficient amounts. The kitchen served rotten meat and sour milk. *Id.* at ¶ 47. Esmor officials and guards ordered detainees not to report food problems to INS inspectors who visited the facility. *Id.* at ¶ 48.

Guards regularly locked plaintiffs in solitary confinement cells without warning or explanation, without a hearing, ranging from several days to several months. The defendants often shackled plaintiffs to their beds. *Id.* at ¶ 76.

Guards performed strip searches and body cavity searches in a manner designed to degrade and humiliate plaintiffs. *Id.* at ¶ 74.

Defendants prevented plaintiffs from practicing their religious rituals. *Id.* at ¶ 92. Defendants forced plaintiffs to work without compensation. *Id.* at ¶ 85. They took plaintiffs' property and never returned it. Guards stole money from plaintiffs. *Id.* at ¶¶ 95, 96.

Plaintiffs were denied adequate medical treatment. *Id.* at ¶ 108. They were denied access to legal representation. For example, guards, without any justification, often would refuse to allow plaintiffs to use the telephone to discuss their asylum cases with their counsel. *Id.* at ¶ 52. Additionally, defendants continuously failed to transport plaintiffs promptly to their asylum hearings. *Id.* at ¶ 55. As a result, plaintiffs often missed important asylum meetings (which resulted in a postponement of their asylum hearings) and prolonged their detention at Esmor. *Id.* at ¶¶ 52, 55. Moreover, female detainees were forced to choose between being sexually assaulted and contacting their lawyers—as guards premised using the telephones on submitting to their unwanted sexual advances. *Id.* at 71.

Plaintiffs allege that at all times during the events that gave rise to the complaint the individual Esmor defendants were employees and agents of both Esmor and the INS. They also assert that Esmor officers and INS officials either were or should have been aware of the pattern of abuses taking place at the Esmor facility. ·

The Esmor facility was closed after a revolt by the detainees on June 18, 1995. Some of the plaintiffs are still subject to detention at other facilities; some have been granted political asylum, and some have been deported.

On the basis of their factual allegations, plaintiffs assert numerous claims against each category of defendants. Counts 68–84 accuse the Esmor guards of violations of the First, Fifth, and Thirteenth Amendments to the United States Constitution, numerous provisions of the New Jersey Constitution, the ICCPR, customary international law, the ATCA, the RFRA, the Fair Labor Standards Act, and New Jersey law. With the exception of counts 80 (failure to compensate employees under the Fair Labor Standards Act) and 83 (failure to ensure the safety of plaintiffs' confiscated property under New Jersey law), all these counts assert active violations of detainees' rights by the guards themselves.

In counts 50–67 plaintiffs make corresponding allegations against Esmor officers—predicating the officers' liability for the actions of the guards on "failing to curb" the pattern of abuse, on "deliberate indifference," and, in the case of the New Jersey tort law claims, on theories of respondeat superior and of negligent hiring, training, and supervision.

The claims against Esmor as a corporation (counts 31–49) are equivalent to those against the Esmor officers, with the addition of a breach of contract claim (count 33) alleging that the plaintiffs' were third-party beneficiaries of Esmor's contract with the INS and that they were harmed by Esmor's breach of that contract. The language of count 37 is a little different from that of count 55: in the former the corporation is accused simply of failing to take appropriate steps to ensure that property was protected; in the latter the officers are accused of acting with deliberate indifference to the plaintiffs' being deprived of property. Also, the distribution of

"failing to curb" or "failing to take appropriate steps to curb" and "deliberate indifference" is not the same in the Esmor counts as it is in the Esmor officer counts.

In counts 13–30 plaintiffs invoke the same rights against the INS officials as they do against the Esmor officers—advancing theories of liability based on omissions—"failing to curb" and "deliberate indifference." In their claims under New Jersey law, plaintiffs allege negligent hiring and supervision, the breach of a duty to ensure the safety of plaintiffs' confiscated property, and the breach of a duty to ensure plaintiffs' safety from abuse.

Finally, in counts 1–12 plaintiffs assert claims against the INS—invoking New Jersey tort and contract law, the ICCPR, customary international law, the RFRA, and the ATCA. In all counts other than those invoking New Jersey law, INS liability is predicated upon its failure to curb abuses at the Esmor facility. In alleging violation of New Jersey tort law, plaintiffs advance theories of respondeat superior, of negligent hiring and supervision, and or failure to ensure that plaintiffs could recover their confiscated property.

The complaint requests money damages, costs, and a declaratory judgment that defendants have violated the numerous laws under which the action is brought.

## II. *Procedural History*

On April 3, 1997, plaintiffs' attorney filed administrative claims with the INS. As the INS notes in the brief supporting its motion, Plaintiff Abraham Kenneh had previously filed a claim *pro se* (according to exhibits, no later than July 1996). That claim was denied in a letter signed August 12, 1997. (The INS places the denial on August 14, 1997). Thirteen of the plaintiffs claimed specific amounts for property damage but not for any other alleged harm. The remaining plaintiffs attached no specific amounts to any of their claims.

On April 22, 1997, the Assistant Regional Counsel for the INS, wrote plaintiffs' attorney advising her that none of the administrative claims had included evidence of her authority to represent the claimants, as required under pertinent regulations.

According to the declaration of the attorney, Penny Venetis, Esq., she has attempted to obtain and submit the requested evidence, but has succeeded in doing so for only six of the plaintiffs. She asserts that her failure to do so is the result of numerous difficulties in communicating with them.

The present action was instituted on June 16, 1997. On or about July 2, 1997, according to Ms. Venetis' declaration, an original summons and complaint was served upon the United States Attorney's Office. Plaintiffs also served the United States Attorney General and the INS. On December 19, 1997, in accordance with 28 U.S.C. § 2679(d), the Justice Department filed a certification with this Court to the effect that the INS officials were acting within the scope of their employment when they engaged in the conduct that is the subject of the complaint. The United States was accordingly substituted as a defendant for the INS officials as to counts 14, 20, 24, 27, 28, and 29 of the complaint.

## DISMISSAL PURSUANT TO RULE 12(b)(1)

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction may be made at any time. Fed. R.Civ.P. 12(h)(3); *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977). A defendant may challenge whether subject matter jurisdiction exists in one of two ways. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed.1990). The first is a facial challenge to jurisdiction asserting that plaintiff's complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir.1983). "[T]he court in assessing a Rule 12(b)(1) motion based on the pleadings must assume that the allegations contained in the complaint are true." *Id.* The second method is a factual attack on the jurisdictional allegations of the complaint. When this method is employed, the court may rely on affidavits and other such competent evidence. *Land v. Dollar*, 330 U.S. 731,

735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3d Cir.1972); *Donio v. United States*, 746 F.Supp. 500 (D.N.J.1990); 2A James A Moore, *Moore's Federal Practice* ¶ 12.07[2.–1] (2d ed.1994). "Once the existence of subject matter jurisdiction is challenged, the burden of establishing it always remains on the party asserting jurisdiction." Moore, *supra,* ¶ 12.07[2.–1]. But, before an action may be dismissed, the party asserting jurisdiction must have an adequate opportunity to respond to the grounds on which the complaint was actually dismissed. *Berardi v. Swanson Memorial Lodge No. 48,* 920 F.2d 198, 200 (3d Cir.1990). "Trial judges enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions. But 'the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.'" *Id.* (quoting *Local 336, American Fed. of Musicians, AFL—CIO v. Bonatz,* 475 F.2d 433, 437 (3d Cir. 1973)); *accord Tanzymore v. Bethlehem Steel Corp.,* 457 F.2d at 1323. The court may grant limited discovery to determine whether subject matter jurisdiction exists. Moore, *supra,* ¶ 12.07[2.–1]

■ There are two important distinctions between a dismissal under 12(b)(1) and one under 12(b)(6) for failure to state a claim. "First, a dismissal under (b)(1) is not on the merits and is thus not given res judicata effect." *Id.* "Second, the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action." *Id.* (citing *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

### DISMISSAL PURSUANT TO RULE 12(B)(6)

■ A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In analyzing motions to dismiss, all allegations set forth in the complaint must be accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). A court should allow a plaintiff an opportunity to amend the complaint instead of dismissing it where "a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *see Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984).

■ A motion to dismiss which presents the court with matters outside the pleading which are not excluded is to be treated as a motion for summary judgment and analyzed pursuant to Rule 56. Fed.R.Civ.P. 12. In such circumstances, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* However, an undisputedly authentic document attached to a motion to dismiss may be considered without converting it into a motion for summary judgment if plaintiff's claims are based upon that document. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

### ANALYSIS

#### I. Claims Under International Law

Plaintiffs rely heavily upon international law to establish claims against all of the defendants, including the INS and its officers. This might seem like an unnecessary journey in view of the state and federal law remedies which at least at the outset were available to plaintiffs. Since some of those remedies may have slipped from their grasp, however, it is necessary to examine the international law claims. This involves a two step process. The first step is to determine if plaintiffs have a claim under international law. If they do have such a claim the second step is to determine whether it may be asserted against the various categories of defendants in this case.

28 U.S.C. § 1350 ("ATCA") provides that "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Plaintiffs have included among their papers in opposition to the motion to dismiss nineteen treaties, charters on human rights, conventions and other international instruments articulating the rights of refugees and seekers of asylum and condemning or prohibiting in general or specific terms many of the kinds of abuses which are alleged in the complaint.

■ In order for a treaty to confer rights enforceable by private parties it must be self-executing, that is, a treaty which requires no legislation to make it operative. *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir.1985). Unless a treaty is self-executing, it must be implemented by legislation before it can give rise to a private right of action enforceable in a court of the United States. *Dreyfus v. Von Finck*, 534 F.2d 24 (2d Cir.1976), *cert. denied*, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976).

None of the treaties or other international instruments which plaintiffs have submitted are self-executing. Plaintiffs recognize that these treaties do not per se provide a basis for suit under the ATCA. Rather, they are submitted for another purpose—to support a claim under the "law of nations" or international law, which is also a basis for an ATCA action: "The complaint alleges violations of customary international law and not specific treaties. The complaint alleges that defendants' abuses of plaintiffs asylum seekers violated customary international law *as informed by* various international human rights treaties and other international human rights instruments." (Plaintiffs' Brief at p. 21) (emphasis on original).

■ The Court of Appeals for the Third Circuit has not addressed the question how the law of nations should be determined for the purpose of the ATCA. Other courts of appeals have taken varying approaches. According to Restatement (Third) of Foreign Relations Law ("Restatement Third") § 102(2) (1987), customary international law "results from a general and consistent practice of states which is followed by them from a sense of legal obligation." The law of nations "may be ascertained by consulting the work of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160–61, 5 L.Ed. 57 (1820). Highly relevant to the inquiry whether international law confers a fundamental right upon all people are treaties (such as the United Nations Cherter), internationally or regionally adopted covenants or declarations of human rights and foreign policy goals of the United States and other countries in the field of human rights.

■ In *Filartiga v. Pena–Irala,* 630 F.2d 876 (2nd Cir.1980) the court breathed new life into the ATCA; originally enacted in 1789. It held that "[t]he constitutional basis for the Alien Tort Statute is the law of nations, which has always been part of the federal common law" *Id.* at 885, and that "courts must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today." *Id.* at 881. "[E]volving standards of international law govern who is within the [Alien Tort Act's] jurisdictional grant." *Amerada Hess Shipping Corp. v. Argentine Republic,* 830 F.2d 421, 425 (2nd Cir.1987), *rev'd on other grounds,* 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Depending upon the nature of the offense, an ATCA claim may be brought against private individuals as well as state actors. *Kadic v. Karadzic,* 70 F.3d 232 (2nd Cir.1995), *cert. denied,* 518 U.S. 1005, 116 S.Ct. 2524, 135 L.Ed.2d 1048 (1996).

■ Many courts have concluded that the ATCA provides both jurisdiction and a cause of action for claims under customary international law. *See Abebe–Jira v. Negewo,* 72 F.3d 844, 848 (11th Cir.1996); *In re Estate of Marcos, Human Rights Litigation ("Marcos II"),* 25 F.3d 1467, 1474–75 (9th Cir.1994); *Xuncax v. Gramajo.* 886 F.Supp. 162, 179 (D.Mass.1995); *Paul v. Avril,* 812 F.Supp. 207, 212 (S.D.Fla.1993); *See also Tel–Oren* (Edwards, J. concurring in decision to deny jurisdiction, but recognizing that the ATCA

provides a cause of action under international law).

Not all jurists interpret the ATCA as broadly as these courts and the Court of Appeals for the Second Circuit, see Judge Bork's concurring opinion in *Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). However, Congress has left untouched the *Filartiga* approach even as it legislated in this field. The Torture Victim Act, enacted in 1992, for example, creates a cause of action for official torture and extrajudicial killing. "Congress enacted the Torture Victim Act to codify the cause of action recognized by this Circuit in *Filartiga*, and to further extend that cause of action to plaintiffs who are U.S. citizens". *Kadic*, 70 F.3d at 241. The reasoning of *Filartiga* and cases which have followed it is sound, and it will be followed in this case.

■ For the purposes of the present motions, the allegations of the complaint must be accepted as true and all reasonable inferences favorable to plaintiffs must be drawn from them. When this is done, it is evident that the totality of the treatment to which plaintiffs were subjected violated customary international law as it is now established. A multitude of sources establishes this rule of international law, and the references below are by way of example only.

Restatement Third § 702 provides:

A state violates customary international law if it practices, encourages or condones: genocide, slavery or slave trade; the murder or causing the disappearance of individuals; torture or other cruel, inhuman or degrading treatment or punishment; prolonged arbitrary detention; systematic racial discrimination, or; a consistent pattern of gross violations of internationally recognized human rights.

A number of international instruments prescribe cruel, unhuman or degrading treatment. For example, the European Convention on the Protection of Human Rights and Fundamental Freedom, Nov. 4, 1950, Europ. T.S. 5, 213 U.N.T.S. 221, 224 (1956) provides that "[n]o one shall be subjected to torture or to inhuman or degrading treatment or punishment." The United States has recognized this customary international human rights norm. In *United States v. Iran*, 1980 I.D.J. 3, the United States argued that even though at that time neither the United States nor Iran had ratified treaties proscribing such conduct, they were nevertheless bound by the norm.

American Courts have recognized that the right to be free from cruel, unhuman or degrading treatment is a universally accepted customary human rights norm. *Abebe–Jira v. Negewo*, 72 F.3d 844 (11th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 96, 136 L.Ed.2d 51 (1996); *Najarro de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir.1985); *Paul v. Avril*, 901 F.Supp. 330 (S.D.Fla.1994); *Xuncax v. Gramajo*, 886 F.Supp. 162 (D.Mass.1995). Each of these cases involved extreme forms of abuse, but the entirety of the conduct in which the Esmor guards were alleged to have engaged over a considerable period of time approaches the abuses in certain of these cases and would clearly violate the Eighth Amendment's prohibition against cruel and unusual punishment. The plaintiffs in the present case were not post trial detainees; they were for the most part detainees awaiting a hearing on their applications for political asylum. (See *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) for a discussion of Fifth and Fourteenth due process protection of pretrial detainees).

The mental and physical abuses which are alleged to have been inflicted upon plaintiffs violate the international human rights norm of the right to be free from cruel, unhuman and degrading treatment. The ATCA confers federal subject matter jurisdiction when i) an alien sues, ii) for a tort iii) committed in violation of the law of nations (i.e., international law), *Kadic*, 70 F.3d at 238. The complaint sufficiently alleges all three jurisdictional requirements.

Because the ATCA provides jurisdiction over plaintiffs' claims based on international law, it is unnecessary to decide if 28 U.S.C. § 1331 (federal question jurisdiction) provides an independent basis for jurisdiction. See discussion in *Kadic*, 70 F.3d at 246.

Defendants contend that because United States laws provide constitutional and legislative protection which afford plaintiffs adequate relief, plaintiffs are precluded from bringing international law claims under the ATCA.

■ Contrary to defendants' argument, there is no absolute preclusion of international law claims by the availability of domestic remedies for the same alleged harm. The cases cited by the defendants merely stand for the principle that international law is effectively pre-empted by valid acts of any of the three branches of government. *See, e.g., Garcia–Mir v. Meese*, 788 F.2d 1446 (11th Cir.1986). Some of the cases that support this contention might be read to indicate that the United States can occupy a field so thoroughly as to pre-empt the operation of other law—for instance where Congress has manifested an intent to provide a comprehensive and exclusive scheme of legislation in a given area. *See American Baptist Churches in the U.S.A. v. Meese*, 712 F.Supp. 756, 771 (N.D.Cal.1989) (finding congressional intent to provide exclusive means of obtaining refuge in the United States); *see also Galo–Garcia v. Immigration and Naturalization Serv.*, 86 F.3d 916, 918 (9th Cir.1996); *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1451 (9th Cir.1995). One could also construe some courts' opinions on private individuals' rights to invoke international law as rejecting application of international law in areas subject to domestic law. For instance, in *Skiriotes v. Florida*, 313 U.S. 69, 72, 61 S.Ct. 924, 85 L.Ed. 1193 (1941), the Supreme Court (in ruling that international law did not restrict the ability of the United States to govern the conduct of its own citizens on the high seas) stated that international law is concerned with international rights and duties, not domestic rights and duties; in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 422–23, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), the Court observed that "[b]ecause of its [international law's] peculiar nation-to-nation character the usual method for an individual to seek relief is to exhaust local remedies and then repair to the executive authorities of his own state to persuade them to champion his claim in diplomacy or before an international tribunal." These statements, however, appear to refer more to the issue of private rights of action under international law than to any principle of preclusion applicable to actions brought pursuant to the ATCA.

Perhaps if there were domestic law in conflict with the norms of international law, domestic law should prevail. That is not the case here where domestic law is consistent with international norms. There is nothing in the ATCA which limits its application to situations where there is no relief available under domestic law. There is no reason why plaintiffs cannot seek relief on alternative grounds. *cf., Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Department of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The second step in the ATCA analysis is to determine whether the various defendants are subject to suit under the statute. The defendant categories are: i) the INS, ii) officials of the INS, iii) Esmor, iv) supervisory employees of Esmor and v) the guards who are alleged to have committed the abuses.

■ **1.** *INS:* The INS moves to dismiss the ATCA claims against it because the United States has not waived its sovereign immunity with respect to that statute. Absent a specific waiver of such immunity the United States and its agencies are immune from suit and courts lack jurisdiction over them. *FDIC v. Meyer*, 510 U.S. 471, 474–75, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

■ Plaintiffs argue that the International Covenant on Civil and Political Rights ("ICCPR") read in conjunction with the ATCA constitutes the requisite waiver of sovereign immunity. The United States ratified the ICCPR in 1992. It provides in relevant part:

Each State party to the present Covenant undertakes: (a) to ensure that any person whose rights or freedoms herein recognized are violated shall have an effective

remedy, notwithstanding that the violation has been committed by persons acting in an official capacity; (b) to ensure that any person claiming such a remedy shall have his right thereto determined by competent judicial, administrative or legislative authorities.

ICCPR Article 2(3)(a–b).

■ Upon ratification of the ICCPR, the Senate attached a "declaration" (as opposed to a "reservation" entered for articles 7 and 15). The declaration stated that the provisions of Article 2 cited above are not self-executing, 138 Cong.Rec. S4783, at S4784 (Daily ed. Apr. 2, 1992). "Non-self executing" means that absent any further actions by the Congress to incorporate them into domestic law, the courts may not enforce them.

It is plaintiffs' position that the ATCA constitutes the implementing legislation with respect to ICCPR and read together ICCPR and ATCA constitute a waiver of sovereign immunity under ATCA *cf.* *United States v. Mitchell,* 463 U.S. 206, 228, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

■ The intent to waive sovereign immunity must be expressed in clear, unambiguous language. It is difficult to discern an unambiguous waiver (or even an ambiguous waiver) when the Senate ratified the ICCPR, stated that it was not self-executing and made no mention of the 200 year old ATCA.

■ The United States has not waived its sovereign immunity under the ATCA. *See Sanchez–Espinoza v. Reagan,* 770 F.2d 202, 206–07 (D.C.Cir.1985) (citing *Canadian Transp. Co. v. United States,* 663 F.2d 1081, 1092, (D.C.Cir.1980)) (holding that even if customary international law may be applied to foreign sovereigns under the ATCA as interpreted in *Filartiga v. Pena–Irala,* 630 F.2d 876 (2d Cir.1980), it cannot be applied to the United States, as there is no waiver of immunity). The ATCA, in providing jurisdiction and a right of action under the law of nations, does nothing to displace sovereign immunity, and plaintiffs' claims against the INS based on the ATCA must be dismissed.

**2.** *INS Officials:* Plaintiffs sue the INS officials in their individual capacities, alleging that they failed to ensure that the plaintiffs were not treated in the manner previously described and that they acted with deliberate indifference to the wrongs committed against plaintiffs.

■ The INS officials contend that none of the acts with which they are charged constitute violations of customary international law. They allege that Esmor operated the facility under a contract and that there is no allegation in the First Amended Complaint that the INS officials either in their individual or official capacities had the authority or ability to manage the facility. At this stage in the proceedings it would be premature to hold as a matter of law that plaintiffs cannot prove that the INS officials violated customary international law. The viability of plaintiffs' ATCA claim against the INS officials had best be decided in the context of a motion for summary judgment.

■ The INS officials also claim the protection of sovereign immunity citing *Sanchez–Espinoza v. Reagan,* 770 F.2d 202 (D.C.Cir.1985). The facts of the present case are substantially different from those in *Sanchez.* The INS officials are being sued in their individual capacities and are not entitled to sovereign immunity. *Melo v. Hafer,* 912 F.2d 628, 634–35 (3d Cir.1990).

The motions of the INS officials to dismiss the ATCA claims will be denied.

**3.** *Esmor, Its Officials, Directors and Employees:* These categories of defendants move for dismissal of the claims based on international law.

Their first argument, that plaintiffs cannot bring this claim under § 1331, *White v. Paulsen,* 997 F.Supp. 1380 (E.D.Wash.1998), need not be addressed because it has been determined that plaintiffs' claims may be brought pursuant to the ATCA.

■ It should be noted that Esmor, its officers, directors and employees (including the guards) were acting under contract with the INS and were performing governmental services. Thus they were state actors and it is unnecessary to address the question raised

in *Kadic,* namely the extent to which non-state actors can be sued under the ATCA.

All of the other contentions-of the Esmor defendants were addressed above and decided adversely to them. Consequently, their motion to dismiss the ATCA claims will be denied.

## II. *Claims Under Federal Tort Claims Act:*

The INS moves to dismiss plaintiffs' claims under the Federal Tort Claims Act ("FTCA") for lack of jurisdiction.

**A. *United States as Proper Party:*** The INS contends that the plaintiffs have failed to name a proper party defendant under 28 U.S.C. § 2679(a). There is no disputing that under the plain language of § 2679(a) the United States, and not an agency of the United States, is the only proper defendant in tort actions arising from the alleged negligent or wrongful conduct of federal employees. However, as plaintiffs suggest in their brief in opposition, this defect can be cured simply by amending the complaint. In the present case such an amendment would not need to relate back to the time of filing. While 28 U.S.C. § 2401(b) requires that an FTCA plaintiff file suit within six months of the denial of an administrative claim, in this instance there was no such denial; plaintiffs instead rely on the deeming provision of § 2675(a), whereby an administrative claim may be deemed denied if an agency does not make a final disposition within six months of its filing. In such a case a plaintiff may file suit at any time once those six months have elapsed (subject to the limitation that he or she may not file suit more than six years after the claim accrues, *see* 28 U.S.C. § 2401(a)). *See Reo v. United States Postal Serv.,* 98 F.3d 73, 78 (3d Cir. 1996); *Pascale v. United States,* 998 F.2d 186 (3d Cir.1993).

**B. *Failure to Exhaust Administrative Remedies:*** The second general objection to subject matter jurisdiction raised by the INS is that the plaintiffs have, on several grounds, failed to exhaust administrative remedies as required under 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.2(a). First, the INS asserts that the plaintiffs have failed to give proper notice of their administrative claims by (1) failing to present evidence that Penny Venetis, Esq., was the plaintiffs' duly authorized agent and by (2) failing to indicate on their claim forms a required sum certain amount of damages. Second, the INS asserts that plaintiffs failed to wait the six months after submitting their administrative claims (April 3, 1997) before filing this case in federal court (June 16, 1997) as required by 28 U.S.C. § 2675(a). Although six months has now passed since the filing of the administrative claims, the INS rightly points out that *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), mandates a strict application of the timing requirements of § 2675(a): a case filed prematurely may not loiter on the docket and spring to life once the required period has elapsed.

1. *Premature Filing:* The INS' premature filing argument is disposed of if it is held that plaintiffs' action against the United States will not have begun until the complaint is amended to include it as defendant. If the suit against the United States is deemed to have begun when the United States was substituted as a defendant for the INS officials (December 19, 1997), it will not be premature. Alternatively, plaintiffs' party designation error provides them with a means to cure their timing error. This approach was endorsed in dicta of the Court of Appeals for the Third Circuit in *Morano v. United States Naval Hosp.,* 437 F.2d 1009, 1011, (3d Cir.1971).

The court in *Morano* stated that an amendment to substitute the United States as a party could constitute a timely beginning of a suit against the United States, even where the initial filing might have been premature. It is true that *Morano* was decided long before *McNeil,* but *Morano's* approach to dating the commencement of an action against the United States was at least technically not touched by the *McNeil* holding that a suit which *had been* commenced against the United States could not become timely while it remained on the docket. The Supreme Court in *McNeil* simply accepted the Court of Appeals' determination that McNeil's suit

had commenced with his initial filing and that none of his subsequent submissions to the district court constituted a new complaint. 508 U.S. at 110–11, 113 S.Ct. 1980; *McNeil v. United States,* 964 F.2d 647, 649 (7th Cir. 1992). Case titles suggest that McNeil's suit in district court named the United States Public Health Service, No. 89 C.1822, 1991 WL 9994 (N.D.Ill. Jan.24, 1991); the Court of Appeals title names the United States, 964 F.2d 647; the opinions do not refer to a substitution of defendants. Although some broad language from *McNeil* might suggest otherwise ("... Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." 508 U.S. at 112, 113 S.Ct. 1980), *Morano*'s definition of the commencement of suit seems to decide the issue.

The post-*McNeil* district court case of *Krumins v. Atkinson,* No. Civ. A. 96–2144, 1997 WL 22396 (E.D.Pa. Jan.17, 1997), seems to take the contrary position—finding a failure to exhaust administrative remedies because an administrative claim was submitted after the initial filing in a suit in which the United States was not the original defendant. It should be noted however that in *Krumins* even the attempt to substitute the United States as a defendant was premature, and in any case the administrative claim was filed after the statute of limitations had run.

**2. Sum Certain Requirement:** The prior presentation of a proper administrative claim to the appropriate government agency is a requirement for jurisdiction in suits against the United States. *See* 28 U.S.C. § 2675(a); *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir.1971). The policy goal underlying the administrative claim requirement of § 2675 is "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States," S.Rep. No. 89–1327, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2515, 2516, along with the additional goal of "providing for more fair and equitable treatment of private individuals and claimants," S.Rep. at 5, *both passages quoted in Adams v. United States,* 615 F.2d 284 (5th Cir.1980), *quoted in Tucker v. United States Postal Serv.,* 676 F.2d 954, 958–59 (3d Cir.1982). In defining the proper presentation of an administrative claim for jurisdictional purposes, courts have agreed that a claimant must (1) give the agency written notice of the claim sufficient to enable it to investigate and (2) place a value on the claim. *See Tucker,* 676 F.2d at 958–59 (quoting *Adams,* defining "minimal notice"). A claim to which a request for damages in a sum certain has not been attached is not deemed presented, and jurisdiction cannot be based upon it. *See Bialowas; Tucker; Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11 (3d Cir.1975), *overruled on other grounds,* 659 F.2d 306 (3d Cir.1981), (hereinafter *"NAFI"*). One need look no further than the statutory scheme to see the reasoning behind such a requirement. 28 U.S.C. § 2675(B) places strict limits on suits for damages in excess of amounts claimed at the administrative level; such limits would be meaningless if claimants were not required to place specific values upon their administrative claims: no sensible claimant would ever specify an amount.

Only three district courts in this circuit have arguably departed from the requirement of a sum certain. Assuming those cases were correctly decided, none presents facts that would invite a similar decision in this case. *See McCallum v. United States Dep't of Hous. and Urban Dev.,* Civ.A. No. 85–4626, 1986 WL 14217 (E.D.Pa. Dec.15, 1986); *Collins v. United States,* 626 F.Supp. 536 (W.D.Pa.1985); *Church v. United States,* 409 F.Supp. 285 (D.Del.1976).

The requirement of a sum certain claim, however, does not amount to an endorsement of any particular mode of presentation. The court in *Bialowas* suggested as much in rejecting a claim which provided neither a single specific sum nor "information ... from which a specific amount could be computed." 443 F.2d at 1049. A claim may be sufficient if a total amount is "directly inferable" from information presented. *See Leaty v. United States,* 748 F.Supp. 268, 269 (D.N.J.1990) (quoting the same court's opinion in a related action, Civil Action No. 90–699 D.N.J. filed Sept. 14, 1990 at 5); *Boyd v. United States,* 482 F.Supp. 1126, 1129 (W.D.Pa.1980); *Da-*

nowski v. United States, 924 F.Supp. 661, 668 (D.N.J.1996). The critical issue is the claim's "utility in effecting the policy goals of § 2675(a)," Leaty, 748 F.Supp. at 271—whether the claim "enables the target agency to pursue avenues of negotiation and settlement," id. The determination is based on the facts and circumstances of each case, see id. (quoting Champagne v. United States, 573 F.Supp. 488, 494 (E.D.La.1983)).

■ In the present case thirteen of the plaintiffs have submitted claims demanding sums certain regarding losses of property but not regarding any other alleged harm. The remaining plaintiffs have not submitted any sum certain claims. Some of the sum certain claims do not add up figures provided as values for lost items, and almost all refer to the estimated value of the lost property; but these are not fatal defects: the INS could easily have inferred the value of claims by adding component figures, and the use of the term "estimated" in such a context refers not to any inexactitude in the claim, but rather to the imprecision inherent in defining the value of merchandise or recalling the exact amount of lost money.

Nor are the thirteen sum certain property-related claims rendered ineffective for jurisdictional purposes because they were asserted along with other defective claims. Some courts have held that the sum certain requirement applies to all claims asserted in an administrative filing—so that a failure to attach a value to all claims deprives the court of jurisdiction over any, see, e.g., Robinson v. United States Navy, 342 F.Supp. 381 (E.D.Pa.1972), but such a result is not required, see Schwartzman v. Carmen, 995 F.Supp. 574, 576 (E.D.Pa.1998) (allowing a property claim for which a sum certain had been stated while excluding a personal injury claim for which one had not, reasoning that the government could have settled the property claim separately). The logic of allowing one claim while excluding another is particularly persuasive in this case, where plaintiffs'

property losses do not appear to arise from the same set of facts as their other injuries.

In accordance with this reasoning, plaintiffs' FTCA claims against the United States, including those for which the United States has been substituted as a defendant under § 2679(d), must be dismissed for failure to exhaust administrative remedies, with the exception of claims relating to property losses by plaintiffs who submitted sum certain administrative claims.[1]

■ 3. *Evidence of Authority Requirement:* In an additional challenge to the sufficiency of plaintiffs' administrative filings, the INS argues that most of plaintiffs' administrative claims were defective for failing to provide evidence that Ms. Venetis was their fully authorized representative. The requirement that such evidence be submitted is not explicitly statutory; rather, it is laid out in the regulations governing the content of administrative claims. See 28 C.F.R. § 14.2(a). The critical question is whether the evidence of authority requirement is jurisdictional, or whether it is simply a component of settlement procedures.

In *Tucker* the Court of Appeals for the Third Circuit made it clear that the regulations (including § 14.2) promulgated pursuant to 28 U.S.C. § 2672 (which defines the settlement authority of government agencies) do not define the jurisdictional requirements for submission of administrative claims under § 2675. 676 F.2d at 957 (quoting *Adams* at length); see also Leaty; Cf. Danowski; but see Martinez v. United States, 743 F.Supp. 298 (D.N.J.1990); Dondero v. United States, 775 F.Supp. 144, 148 (D.Del.1991) (interpreting *Tucker* as providing support for the point that regulations define notice under § 2675). (*Adams* conceded only arguendo that 28 C.F.R. § 14.2 might be an attempt to define jurisdiction, observing that plaintiffs had in any case fulfilled its requirements, falling short only as to § 14.3) To the extent that *NAFI* suggested that the regulations define jurisdiction, it was superseded by *Tucker.* The court in Livera v. First Nat'l State Bank

---

1. Sufficient property claims were submitted by plaintiffs Addai, Anang, Awotwe, Badjoko, Bakar, Crespo, Jama, Jeyakumar, Kenneh, Manoharan, Manu, Raji. The exhibits accompanying plain-

tiffs' moving papers do not include a claim of Agatha Serwaa; if she filed a fixed sum property claim she too is entitled to the benefit of this ruling.

*of N.J.* 879 F.2d 1186 (3d Cir.1989), observed that then § 14.2(b)(1) "sets forth the content standards required for tort claims against the United States" and held that a claim which fails to state a sum certain, as the regulations require, fails to provide jurisdiction, 879 F.2d 1186, 1195 (3d Cir.1989); but these statements fall short of holding that all the regulations represent essential requirements for jurisdiction.

Given that the procedural requirements of the regulations and the jurisdictional requirements of § 2675 are not identical, the mere inclusion in the regulations of a requirement for evidence of authority does not confer jurisdictional significance upon it. Further, the presentation of such evidence would not seem essential to the minimal notice required under § 2675. The submission of a claim by an attorney "raises the presumption that the attorney has the authority to act" on behalf of the party he or she purports to represent, *Leaty* 748 F.Supp. at 273 (quoting *Graves v. United States Coast Guard,* 692 F.2d 71, 74 (9th Cir.1982)), and is therefore sufficient as the initial presentation of a claim. (*Leaty* suggests that a letter from an attorney—at least, as in that case, in conjunction with a previously submitted claim form naming the represented party as a claimant—is sufficient evidence of authority to conform not only to the statutory requirement but also to those of 14.2(a) and 14.3(b).)

*Tucker* observed that the failure, subsequent to the initial filing of a claim, to provide additional evidence of injury might rightly deprive a claimant of a chance to settle a claim, but held that it should not be fatal to jurisdiction. 676 F.2d at 959 (quoting *Adams*). The failure to supply evidence of an attorney's authority falls into the same category. The only Third Circuit Court of Appeals case which suggests that the requirement for evidence of authority may be jurisdictional is *NAFI,* 520 F.2d 11; but as the court in *Leaty* pointed out, in *NAFI,* the State of Pennsylvania sought to sue on behalf of a large class of unidentified claimants, and the claims asserted by the state were not entirely independent of those it sought to assert as a representative. *Leaty* 748

F.Supp. at 274. The present case also is distinguishable from NAFI.

■ 4. *Curing Deficient Administrative Claims:* Plaintiffs suggest that they should be permitted to cure any jurisdictional defects in their administrative claims. Such curing could have no effect on this court's consideration of the present motion. With the noted exceptions, plaintiffs have failed to provide minimal notice of their claims to the appropriate agency. Under § 2675 they may not bring suit until six months after doing so—or until the agency takes final action on their claims. If it were possible for a plaintiff simply to amend an administrative claim so as to relate back to his or her original submission *and* stay in court as a result, none of the issues discussed above need ever be argued.

Moreover, although it is not necessary to decide the issue, plaintiffs are almost certainly barred by the statute of limitations, § 2401, from any further attempts to file administrative claims. In *Bialowas,* before concluding that the plaintiff's administrative claim was defective, the court noted that, since the statute of limitations had run, his action would be forever barred unless he could rely on that claim to establish jurisdiction. 443 F.2d at 1049. Other courts have made the same observation. *See Schwartzman,* 995 F.Supp. at 576; *Robinson,* 342 F.Supp. at 384; *LeGrand v. Lincoln,* 818 F.Supp. 112, 116 (E.D.Pa.1993); *Farr v. United States,* 580 F.Supp. 1194, 1196–97 (E.D.Pa.1984); *Leaty,* 748 F.Supp. at 270 (quoting *Blain v. United States,* 552 F.2d 289, 291 (9th Cir.1977)). In *Simms v. United States,* Civ.A. No. 89–0165, 1990 WL 4416 (E.D.Pa. Jan.19, 1990), *aff'd* 914 F.2d 244 (3d Cir.1990), the court, denying jurisdiction, held that the submission of a proper administrative claim after the two-year statute of limitations had run could not relate back to a timely but defective filing to establish jurisdiction. *See also Jordan v. United States,* 333 F.Supp. 987, 989–90 (E.D.Pa.1971), *aff'd* 474 F.2d 1340 (3d Cir.1973). The only case to the contrary in this circuit appears to be *Apollo v. United States,* 451 F.Supp. 137 (M.D.Pa.1978). *See also Avila v. INS,* 731 F.2d 616 (9th Cir.1984); *Koziol v. United*

*States,* 507 F.Supp. 87 (N.D.Ill.1981); *Thompson v. United States,* 749 F.Supp. 299 (D.D.C.1990).

For the reasons set forth above, all of plaintiffs' FTCA claims will be dismissed except for the claims for property losses of the plaintiffs who submitted administrative property loss claims setting forth the amounts or estimated amounts of their property loss.

### III. *Other Claims against INS or the United States:*

█ Plaintiffs have asserted claims against the INS based on state law, specifically, the New Jersey Constitution. If this claim is based upon the FTCA, it must fail for the reasons set forth above. Otherwise, principles of sovereign immunity preclude the claim.

█ Plaintiffs allege that "[d]efendant INS breached its contractual duties of care to Plaintiffs, who were intended third party beneficiaries of the Contract [between INS and Esmor]. As a result of the breach, Plaintiffs suffered severe physical and mental harm." (First Amended Complaint, ¶ 122). If this is in effect a tort claim, it fails for the reasons previously stated. If it is a contract claim, apart from the highly questionable basis for third party beneficiary status, jurisdiction has not been established. The district court has jurisdiction only over contract claims in which the amount sought is less than $10,000. 28 U.S.C. § 1346(a)(2). Plaintiffs' claims on account of the "severe physical and mental harm they suffered" are not so limited and consequently the court does not have jurisdiction of the contract claims.

Plaintiffs allege that the INS "substantially burdened their rights to the free exercise of their religion" and therefore have a cause of action under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et. seq. ("RFRA"). Section 3 of RFRA provides in relevant part:

(c) Judicial Relief.—A person whose exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb–1(c).

Assuming the constitutionality of RFRA, the INS does not challenge that the United States government is subject to suit under the Act[2]. It contends, however, that RFRA does not expressly create a damages cause of action and that the legislative history does not suggest that damages are available. The only relief which is "appropriate" under the statute, the INS further argues, is declaratory or injunctive relief, neither of which would be available in the present case because the Esmor facility has closed. In these circumstances the INS urges that there is no case or controversy and the RFRA claims should be dismissed.

It is not at all certain that "appropriate relief against a government" was not intended to include damages. The Act is relatively new; its construction and constitutionality are uncertain. In these circumstances the prudent course is to deny the motion to dismiss the RFRA claims without prejudice to a renewal of the motion at a time when more guidance concerning its intent may be available.

### IV. *Claims Against INS Officials:*

Plaintiffs have alleged claims against the INS officials in addition to the ATCA claims which have been addressed above.

█ The INS officials claim entitlement to a qualified immunity under the principles established in *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even if such an immunity is available in a RFRA action, it is premature to decide at this point whether these defendants are entitled to its protection. That is a ques-

---

**2.** The Supreme Court held that Congress exceeded its powers under the Amendment when it applied RFRA to the states. *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The INS does not challenges its constitutionality as applied to federal actions.

tion better decided in the context of a summary judgment motion.

For the reasons set forth above for denying the INS' motion to dismiss the RFRA claims, the INS officials' motion to dismiss that claim will be denied without prejudice to its renewal at a later date.

Plaintiffs assert New Jersey tort law and New Jersey Constitutional claims against the INS Officials. These claims must be dismissed.

■ On December 19, 1997 the Attorney General filed a notice of substitution and certification pursuant to which the United States was substituted for the INS Officials on all state law claims. Once the Attorney General has certified that the government employees were acting within the scope of their employment at the time of the incident out of which the state law claim arose, any civil action arising out of the incident is deemed an action against the United States. 28 U.S.C. § 2679(d)(1). By statute "[t]he remedy against the United States provided by sections 1346(b) and 2672 ... for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded ..." 28 U.S.C. § 2679(b)(1).

■ Plaintiffs have asserted three *Bivens* claims against the INS Officials, alleging violations of the First, Fifth and Thirteenth Amendments. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Such claims are not within the exclusive remedy provision of § 2679(b)(1), 28 U.S.C. § 2679(b)(2)(a). The INS Officials move to dismiss the *Bivens* claim based on the Thirteenth Amendment.

■ Plaintiffs charge that these-defendants violated their rights to be free from involuntary servitude by acting with deliberate indifference towards plaintiffs' forced, unpaid labor. These defendants contend that none of the actions attributed to them in the complaint support a claim that they subjected plaintiffs to involuntary servitude, citing *Channer v. Hall,* 112 F.3d 214 (5th Cir.1997). Although this basis for the claim against the INS officials as set forth in the First Amended Complaint is thin, its disposition should await a summary judgment motion after the facts have been developed. The motion will be denied without prejudice to renewal upon completion of discovery.

Plaintiffs have also asserted claims against the INS officials under the Fair Labor Standards Act, 29 U.S.C. § 203, et seq. ("FLSA"), contending that they were employees within the meaning of FLSA forced to work at the Esmor facility without compensation, that the INS officials were "employer enterprise(s) engaged in commerce," as defined in the Act, and may be sued in their individual capacities for violating FLSA. *EEOC v. Blast Intermediate Unit 17,* 677 F.Supp. 790, 792 (M.D.Pa.1987); *Weiss v. Marsh,* 543 F.Supp. 1115, 1118–19 (M.D.Ala. 1981).

It is premature to hold that plaintiffs cannot produce evidence on the basis of which a fact finder could predicate an FLSA violation. These questions also must abide development of a record and be decided in the context of a summary judgment motion. The motion to dismiss the FLSA claim will be denied without prejudice.

## V.  *Claims Against Esmor and its Agents:*

The Esmor defendants' motion to dismiss the international law claims asserted pursuant to the ATCA is denied for the reasons previously stated.

Like the INS Officials, the Esmor defendants have moved to dismiss i) claims asserted under RFRA, ii) claims asserted under the Thirteenth Amendment and iii) claims asserted under FLSA. It must be noted that by virtue of the contract with INS to perform governmental detention functions these de-

**372**

fendants became state actors and were not acting simply as a private corporation or private individuals. For the reasons that the INS officials' motion to dismiss these claims is denied, the motion of the Esmor defendants to dismiss them will be denied. This denial is also without prejudice to renewal in the context of summary judgment motions.

█ The Esmor defendants move to dismiss claims asserted under the New Jersey Constitution. It relies on the arguments that the INS and INS officials advanced. These arguments are not available to the Esmor defendants. It is not protected by sovereign immunity and actions against it are not limited by the FTCA. Further, the Esmor employees are not protected by 28 U.S.C. § 2679(b)(1) which makes a suit against the United States the exclusive remedy for injuries resulting from the wrongful conduct of government employees while acting within the scope of their employment.

█ The Esmor defendants assert that there is no right of action against private actors under the New Jersey constitution. This is not a totally correct statement of the law. *Hoagburg v. Harrah's Marina Hotel Casino*, 585 F.Supp. 1167, 1172 (D.N.J.1984); *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980). In any event the Esmor defendants were state actors by virtue of the responsibilities they assumed under the contract with the INS. The motion to dismiss the New Jersey Constitutional claims will be denied.

### Conclusion

The INS motion to dismiss i) all claims brought against it under ATCA or otherwise based upon customary international law, ii) claims brought against it under the FTCA, iii) claims brought against it arising out of the New Jersey Constitution and iv) claims against it deriving from the contract between Esmor and INS will be granted. The INS motion to dismiss claims arising under RFRA will be denied without prejudice to renewal of the motion.

The First Amended Complaint in this action will be amended to name the United States the defendant on plaintiffs' FTCA claims, and the United States shall be deemed to have moved to dismiss plaintiffs' FTCA claims. The motion of the United States to dismiss the FTCA claims will be granted except with respect to the property claims of plaintiffs who submitted administrative property loss claims setting forth the amounts or estimated amounts of their property losses.

The motion of the INS Officials to dismiss i) claims brought against them under ATCA based upon customary international law, ii) claims brought against them arising under RFRA, iii) claims brought against them arising under the Thirteenth Amendment of the United States Constitution and iv) claims brought against them arising under FLSA will be denied without prejudice to renewal of the motion after discovery has been substantially completed. The motion of the INS officials to dismiss claims brought against them under New Jersey tort and constitutional law is granted.

The motion of the Esmor defendants to dismiss i) claims brought against them under ATCA based upon customary international law, ii) claims brought against them arising under RFRA, iii) claims brought against them arising under the Thirteenth Amendment of the United States Constitution, and iv) claims brought against them arising under FLSA will be denied without prejudice to renewal of the motion after discovery has been substantially completed.