Joaquin DASILVA, et al., Plaintiffs,

v.

ESMOR CORRECTIONAL SERVICES INCORPORATED, et al., Defendants.

Hawa Abdi Jama, et al., Plaintiffs,

v.

United States Immigration and Naturalization Service, et al., Defendants.

Samson Brown, et al., Plaintiff, on behalf of themselves and all others similarly situated,

v.

Esmor Correctional Services, Inc., et al., Defendants.

Civil Nos. 96–3755(DRD), 97–3093(DRD), 98–1282(DRD).

United States District Court, D. New Jersey.

June 10, 2003.

---

Carmen E. Mendiola, Esq., Jersey City, NJ, for Plaintiff, Joaquin DaSilva, et al.

Frank Askin, Esq., Penny M. Venetis, Esq., Newark, NJ, Martin Glenn, Esq., O'Melveny & Myers, LLP, New York City, Sean Mack, Esq., Debevoise & Plimpton, New York City, for Plaintiffs, Hawa, Abdi, Jama, et al.

Bruce J. Ressler, Esq., Ellen R. Werther, Esq., David P. Horowitz, Esq., Ressler & Ressler, New York City, for Plaintiffs, Samson Brown, et al.

Larry S. Reich, Esq., Blank, Rome LLP, New York City, Frank R. Volpe, Esq., Ryan D. Nelson, Esq., Sidley, Austin, Brown & Wood, LLP, Washington, DC, for Defendants, Esmor Correctional Services, Inc., James F. Slattery, John Lima, Richard Staley, and Aaron Speisman.

DEBEVOISE, Senior District Judge.

## I. *The Motion*

Two individual actions and an action that has been certified as a class action are pending in this court: *DaSilva v. Esmor Correctional Services Incorporated,* 96 Civ. 3755 (the "DaSilva Action"); *Jama v. United States Immigration and Naturalization Services,* 97 Civ. 3093 (the "Jama Action"); and *Brown v. Esmor Correctional Services, Inc.,* 98 Civ. 1282 (the "Brown Action"). The Brown Action was originally filed in a New York state court; it was removed to the United States District Court for the Southern District of New York and then transferred to this court in 1998.

The plaintiffs in all three actions were immigrants detained by the United States Immigration and Naturalization Service at a facility in Elizabeth, New Jersey operated by Esmor Correctional Services, Inc. (now Correctional Services Corporation ("Esmor")). Plaintiffs charge that Esmor and others violated various of their federal and state rights. For a more detailed account of the claims see *Jama v. U.S. Immigration and Naturalization Service,* 22 F.Supp.2d 353 (D.N.J.1998). The three actions were consolidated for discovery purposes.

On August 24, 1998 the court certified the Brown Action as a class action pursuant to Fed.R.Civ.P. 23(b)(3). On March 9, 1999 the court signed an order in the Brown Action governing notice to the class. This order recited the "plaintiffs and defendant, Correctional Services Corporation, sued herein under its former name Esmor Correctional Services, Inc. ('Esmor'), have entered into an Agreement with respect to the forms and method of disseminating Notice to the Class ..." There is no suggestion that counsel in the pending DaSilva Action or Jama Action were consulted about the terms of the order for notice to the class. The agreement referred to was between counsel for Esmor and counsel for the Brown Action plaintiffs.

The order required that class counsel mail notice to the class members on or about May 1, 1999 and cause publication of a summary notice on or about May 10, 1999. Paragraph 4 of the order provided that "[r]equests for exclusion from the [Brown Action] class shall be postmarked on or before June 1, 1999, or, in the case of Notice mailed in response to a specific request therefor, within thirty days of such mailing ..." As events transpired this one month period to request exclusion proved to be totally unrealistic, something which class action counsel and perhaps the court should have anticipated.

Counsel for plaintiffs in the Jama Action, relying upon orders of the two Magistrate Judges who were assigned to this case, identified those of their clients who sought to be excluded from the Brown Action class in letters dated July 16, November 19 and December 22, 1999, but they did not request exclusion within the time or in the manner specified in the March 9, 1999 order. These plaintiffs now move for an order amending the March 9, 1999 order in the Brown Action to extend the June 1, 1999 deadline to request exclusion from the Brown Action class, or, in the alternative, for the court to consider as a report and recommendation a March 5, 2003 order of Magistrate Judge Wigenton (and, of necessity, a December 30, 1999 order of Magistrate Judge Hedges) and to adopt those orders as orders of this court. The Brown Action plaintiffs and Esmor and related defendants strenuously oppose the motion, demanding that the Jama Action complaint be dismissed and that the Jama Action plaintiffs litigate their claims in the class action.

Although there was patent failure to comply with the provisions of Paragraph 4 of the March 9, 1999 order of this court governing requests for exclusion, in light of the extraordinary circumstances of this case paragraph 4 will be amended to permit the opt-out of those Jama Action and DaSilva plaintiffs who were identified as opt-outs to counsel in the Brown Action during the course of discovery and as to whom their counsel has provided Brown Action counsel written evidence that they wish to be excluded from the Brown Action class.

## II. *Background*

The complaint in the Jama Action was filed on June 16, 1997. Since that date counsel for the plaintiffs in that action have intensively pursued this litigation. At the outset they were confronted with motions to dismiss brought by the various categories of defendants. The motions raised issues under the Rules of Federal Procedure, treaties, international law, the Alien Tort Claims Act, 28 U.S.C. § 1350, and the Federal Tort Claims Act, 28 U.S.C. § 2679(a), among others. Counsel for the Jama Action plaintiffs engaged in extensive discovery by way of interrogatories, depositions and requests for the production of documents. They settled with the United States Immigration and Naturalization Service, a defendant in their case.

One unusual aspect of the case was the extreme difficulty counsel in the Jama Action had in maintaining communication with their clients. They were immigrants being held for deportation. After the disturbance and their removal from the Esmor facility some were sent to various other detention centers in the United States and many were deported to foreign lands, often where telephone and mail facilities were unavailable or unreliable.

Another and much more serious problem is raised by the results of the Notice to Class members that counsel in the Brown Action mailed pursuant to the March 9, 1999 order. Esmor listed approximately 1,625 names of individuals detained at its Elizabeth facility. Notices could be mailed to only 1,172 individuals on the basis of available information. Of these 922 notices were returned as undeliverable. Under the circumstances of the class members the usual presumption of receipt of a mailing that is deposited in the United States mails is weakened if not totally negated. Thus many class members whose notice were not returned may not have received the notices. It is unlikely that any of the detainees saw the summary notice published in the May 10, 1999 edition of USA Today.

The results of the mailings requires that further inquiry be made at this time to determine which of the class members whose notices were not returned actually received the

notice and which class members can now be located so that they could receive any award by way of settlement or after trial.

While there are multiple advantages to having class action treatment, this additional information is needed so that a decision can be made whether the Brown Action can proceed as a class action. If it does not proceed as a class action and if a large portion of the class is not available to receive settlement funds the usual payment of a fixed sum of money may not be a fair way to resolve the case, and new and creative ways of settling the case may have to be devised to give recognition to the interests of the entire class of 1,625 people.

Counsel in the Jama Action were faced with the same communications difficulties as confronted counsel in the Brown Action. Soon after the events that precipitated their case occurred they were able to communicate with their clients so as to obtain the facts needed to prepare a complaint on their behalf, but thereafter communication with these clients became extremely difficult and in some instances impossible. This practical problem affected the processing of the case and the ability to obtain requests for exclusion from the Brown Action class.

It is against this background that the actions of the parties concerning the opt-outs of the Jama Action plaintiffs will be examined.

As previously noted the Jama Action complaint was filed in June 1997 and the extensive defense motions to dismiss were resolved in 1998, the year in which the Brown Action was transferred to this court. By order dated August 24, 1998 the class was certified in the Brown Action. The class notice order was signed on March 9, 1999, setting the June 1, 1999 deadline for opt-outs.

As required by the March 9, 1999 order the class notice was mailed to 1,172 potential class members prior to the May 1, 1999 deadline (which, in hindsight, was a grievously short notice period given the circumstances of the class members). Summary notice was published in *USA Today* on May 10, 1999. Neither the Jama Action plaintiffs nor anyone else submitted requests for exclusion from the class action postmarked on or before June 1, 1999. The parties are in conflict about some of the details that transpired after that, but the essential facts can be ascertained from the written record, and the matters that remain in dispute are irrelevant to disposition of the motion.

On July 16, 1999 counsel for the Jama Action plaintiffs wrote to counsel for the Brown Action class, stating:

> This letter confirms our discussions, and previous written memorandum, that the following plaintiffs in *Hawa Abdi Jama, et al. v. United States, et al.* should be excluded from the *Brown* class action suit:
>
> Hawa Abdi Jama
>
> Anantharajah Jeyakumar
>
> Abu Bakar
>
> Cecilia Kou Jeffrey
>
> Abraham Kenneh
>
> Dennis Raji
>
> Agatha Serwaa

> In addition, this letter confirms that you do not oppose plaintiffs' request to Judge Debevoise to grant an 120 day extension to *Jama* plaintiffs Sarah Tetteh Yower, Shamimu Nanteza, and Nagendran Manoharan to opt out of the *Brown* class.

On November 19, 1999 Jama Action counsel wrote to Brown Action counsel advising him that "[w]e have re-established contact with *Jama* plaintiff Shamimu Nanteza. She wishes to opt out of the *Brown* class action."

On that same date a conference of counsel in all three cases, (including counsel for Esmor) was held before Magistrate Judge Hedges. It dealt with the status of opt-outs in the DaSilva Action and Jama Action and with discovery issues. Concerning opt-outs the order reflecting the Magistrate Judge's rulings at the conference (not signed until December 30, 1999) stated:

> (b) No later than December 31, 1999, *DaSilva* counsel and counsel for the plaintiffs in *Jama* ("*Jama* counsel") shall provide class counsel with the last known address of any *DaSilva* plaintiff or any *Jama* plaintiff, respectively, with whom their counsel is not now in contact. No later than January 7, 2000, class counsel shall mail a Class

Notice and Opt–Out Form to each such plaintiff at the address provided. Any *Da-Silva* plaintiff or *Jama* plaintiff who is sent an Opt–Out Form pursuant to this paragraph and who does not return the signed form postmarked on or before February 7, 2000 shall be deemed a member of the plaintiff class in *Brown.*

(c) The Court will require at a later date the submission of an Opt–Out form for each remaining *DaSilva* plaintiff and *Jama* plaintiff, and any such plaintiff who fails to submit the form, within such time as may be directed by the court, shall be deemed a member of the plaintiff class in *Brown.*

In effect these provisions modified the March 9, 1999 order of the court by i) requiring class counsel by January 7, 2000 to mail a class notice and opt-out forms to each plaintiff in the DaSilva and Jama Actions with whom Jama Action and DaSilva Action counsel was not in contact; ii) providing that any plaintiff who was sent an opt-out form pursuant to the order and who did not return the signed form on or before February 7, 2000 would be deemed a member of the class in the Brown Action, and iii) at a later time the court would require the submission of opt-out forms for the remaining DaSilva and Jama Action plaintiffs. Both the Esmor defendants and the Brown Action plaintiffs now assert that the Magistrate Judge lacked jurisdiction to modify the March 9, 1999 order in this respect. However, no party appealed the order and the parties proceeded to act in accordance with its provisions.

On December 22, 1999 counsel for the Jama Action plaintiffs complied with the order's requirement that she provide Brown Action counsel with the last known addresses of the plaintiffs with whom she had lost contact, and she noted that contact had been reestablished with Sarah Yetteh Yower who wished to opt-out. The letter read:

Pursuant to Judge Hedges's order, I am sending to you the last known addresses of the *Jama* plaintiffs with whom we have lost contact. I believe you already have their addresses, but I provide them below, nonetheless.

The last address we have for plaintiffs Charles Addai, Florunsho Wasiu Alibi, Benjamin Anang, Kweku Awotwe, Joseph Debrah, and Thomas Kyeu Manu is Lehigh County Jail, North 4th Street, Allentown, PA 18102. The last address we have for plaintiff Joseph Ackah is Berks County Jail, 1287 County Welfare Road, Leesport, PA 19533. The last address we have for Yvette Nsukami Badjoko is Pike County Jail, POB 8601, Hawley, PA 18428. The last address we have for plaintiff Gonzalo Crespo is Entre Las Calles Sandes y Calderon, Giron, Azuai, Ecuador. The last address we have for plaintiff Nagedran Manoharan, which you gave me last summer, is No. 2 E.B. Colony, Kulvaipatty (Post), Trichy—620 007, Tamil Nadu, India. All of these *Jama* plaintiffs were deported.

We have re-established contact with plaintiff Sarah Tetteh Yower. She wishes to opt out of the *Brown* class action lawsuit.

During the following three years consolidated discovery was pursued in the three actions. Magistrate Judge Hedges did not establish a date for the formal submission of opt-out papers as provided in his December 30, 1999 order. Jama Action counsel had advised Brown Action counsel of the identities of the persons who wished to opt-out in her July 16, 1999, November 19, 1999 and December 22, 1999 letters. These letters, of course, did not comply with the provisions of the March 9, 1999 order.

The case was transferred from Magistrate Judge Hedges to Magistrate Judge Wigenton in January 2003. The opt-out issue was brought before her and on February 10, 2003 she signed an order which Brown Action counsel had submitted to her. It required that the Jama Action plaintiffs complete their formal opt-out requests by February 20, 2003. Jama Action counsel had not had an opportunity to review the order prepared by her adversary and by telephone and letter communicated with Magistrate Judge Wigenton expressing her objections, particularly as to the requirement that she provide unredacted copies of retainer agreements with her clients.

Having received a copy of the letter to Magistrate Judge Wigenton, Esmor's counsel wrote to the Magistrate Judge on February 21, 2003 as follows:

The undersigned represents Correctional Services Corporation (formerly Esmor Correctional Services Inc.) And various corporate individuals in the above referenced litigation. This letter is sent in support of *Brown* class counsel's letter of February 21, 2003 concerning the issue whether *Jama* plaintiffs have properly opted out of the *Brown* class.

Until Ms. Venetis' letter of February 13, 2003, I also accepted her representations that the *Jama* plaintiffs' had properly opted out of the *Brown* class action. Similarly, I accepted the representations of Carmen Mendiola, counsel for the *DaSilva* plaintiffs that they properly opted out of the class action. It is shocking that more than three years have elapsed since Judge Debevoise issued his order of March 9, 1999 concerning exclusion from the class and these issues still remain. There now looms serious questions as to whether the *Jama* and *DaSilva* claims against Esmor are viable; whether the hundreds of thousands of dollars expended on the defense of these actions was necessary and why additional time is required by *Jama* counsel to comply with your February 10th, 2003 order.

Under the circumstances, we also request a conference to consider the issues raised herein.

On March 5, 2003 Magistrate Judge Wigenton held a conference with the attorneys for the plaintiffs in each of the three actions and with the attorneys for the Esmor defendants. She wished to address the issue raised by the dispute over the terms of the order she had recently signed. She noted at the outset the issue whether the Jama Action plaintiffs had actually executed opt-out requests. Asked about the status of the opt-outs, Jama Action counsel stated:

Your Honor, I have all of the opt outs here from nine clients that we consistently represented to the court we represent. And we also represented it in the letter that [we sent] to Mr. Ressler, pursuant to

Judge Hedges' oral and written orders. I have those here with me, your Honor.

March 5, 2003 Transcript at p. 6.

After a discussion of the opt-out question, Magistrate Judge Wigenton stated: "But the bottom line is this. I am not excluding their clients and they're not becoming members of the class simply because you feel that they have not complied with Judge Debevoise's March 9th, 1999 order" (Transcript at p. 9). At that point, according to the transcript, Jama Action counsel handed the nine opt-out forms to Brown Action counsel. In effect Magistrate Judge Wigenton designated the opt-out delivery date which Magistrate Judge Hedges had left open in his December 30, 1999 order.

Magistrate Judge Wigenton signed an order dated March 5, 2003 which provided:

ORDERED THAT this Order supersedes the order entered by this Court on February 10, 2003;

IT IS FURTHER ORDERED THAT, subject to the exception listed below, *Jama* and *DaSilva* counsel shall provide to *Brown* counsel by February 20, 2003 proof that their clients wish to opt out of the *Brown* lawsuit. That proof must include signed forms opting out of the *Brown* class-action lawsuit. Those forms may be dated 2003. Opt-out proof may also include client retainer agreements (should the parties wish to disclose that information), and correspondence submitted pursuant to previous Court order, identifying individuals who wished to opt out of the *Brown* litigation.

The order contained a paragraph which apparently was stricken out. It reads:

IT IS FURTHER ORDERED THAT *Jama* and *DaSilva* counsel have until March 20, 2003 to submit signed opt-out forms for clients who are in Africa, who they have previously identified as being in touch with and representing.

This order is somewhat puzzling. The second paragraph refers to exception listed below, but the third paragraph which contains the exception appears to have been stricken out. The second paragraph of this order dated March 5 calls for opt-out proofs ("sub-

ject to the exception listed below") by February 20, a date that had already gone by.

It is clear from the transcript of the March 5, 2003 hearing that Magistrate Judge Wigenton ruled that the nine opt-outs of Jama Action plaintiffs identified in their counsel's July 16, November 19 and December 23, 1999 letters would be given effect. Neither the Esmor defendants nor the Brown Action defendants appealed this ruling or the March 5, 2003 order. The Esmor defendants and Brown Action counsel continued to contend that there had been no valid opt-outs and that the Jama Action plaintiffs could proceed only as class members in the Brown Action. To finally resolve this issue the Jama Action plaintiffs filed the present motion for i) an order declaring that Magistrate Judge Hedges's December 30, 1999 order and Magistrate Judge Wigenton's March 5, 2003 order properly implemented this court's March 9, 1999 order concerning requirements for opting out of the *Brown* class action, ii) an order that the date for the Jama Action and DaSilva Action plaintiffs to submit signed opt-out forms is the date provided for in the order of the aforesaid Magistrate Judges, and iii) modification of this court's March 9, 1999 order to affect these revised opt-out provisions.

## III. *Discussion*

Esmor and defendants James F. Slattery, John Lima, Richard Staley and Aaron Speisman (the "Esmor Defendants") along with counsel for the Brown Action plaintiffs vigorously oppose the motion, contending: "... *Jama* plaintiffs' request is unprecedented, severely prejudices Esmor defendants, fails to comport with any legal requirements, and should be summarily rejected. Accordingly, *Jama* plaintiffs' complaint should be dismissed so that these plaintiffs may appropriately participate in the *Brown* class, which was established to address the very claims that *Jama* plaintiffs have improperly pursued." (Esmor Defendants' Brief at p. 1).

 The Esmor Defendants rely upon legal principles with which there can be little, if any, dispute. In class action litigation "potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class". *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 549, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Where a potential class member fails to opt-out pursuant to the court approved notice procedure, that plaintiff remains within "the confines of the class." *Id.*

 Further, as the Esmor Defendants note, to extend the opt-out period for a class action pursuant to Fed.R.Civ.P. 6(b)(2) and Fed.R.Civ.P. 23(d) a movant must establish "excusable neglect". *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 177 F.R.D. 216, 237 (D.N.J.1997). Establishing "excusable neglect" is the movant's burden. The relevant factors are: i) the danger of prejudice to the nonmovant, ii) the length of the delay and its potential effect on judicial proceedings; iii) the reason for the delay; and iv) whether the movant acted in good faith. *Pioneer Inv. Servs. v. Brunswick Assocs., Ltd. P'ship,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In particular the Esmor Defendants emphasize that "[a] too liberal application of [excusable neglect] in class actions ... would discourage settlement of such actions." *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315, 326 (3d Cir.2001). The Esmor Defendants claim that the Jama Action plaintiffs have "severely impacted the settlement of the *Brown* action ... by issuing settlement demands multiple times higher than those requested by the *Brown* class," and that "[i]n fact, Esmor defendants and *Brown* class counsel have on several occasions attempted to settle the *Brown* class action. But the separate existence of the *Jama* plaintiffs and their exorbitant demands, have impeded such efforts." (Esmor Defendants' Brief at p. 25).

While no quarrel can be had with the Esmor Defendants' articulation of legal principles, these principles have little relevance in the circumstances of these cases. Rather, the question is whether the Brown Action can be maintained as a class action. In their response to the pending motion the Esmor

Defendants submitted the certification of publication and mailing class notice. It was filed on July 19, 1999, but had not been brought to this court's attention until after the filing of the present motion. It discloses that there were 1,625 individuals detained at the Esmor facilities in Elizabeth. This constitutes the class. Using INS records, addresses were ascertained for 1,172 persons to whom notices were sent. These records also listed one or more immigration attorneys. Notices were also sent to these 680 detainees in care of their designated attorneys.

The attorneys for the Brown Action plaintiffs received a few responses. However, directly mailed notices to 922 of the 1,172 detainees were returned as undeliverable. Of the 1,007 individuals for whom some or all of the notices sent were returned, 561 had notices sent to them in care of their attorneys. Of these 493 were not returned. For the remaining 68, either the notices were returned or the attorneys could not confirm their ability to contact their clients.

The fact that a notice was not returned does not establish that the addressee received it. With the members of the class having been transferred to many places in the United States and the rest of the would, and given the circumstances of their confinement or foreign residence, the ordinary presumption that a regularly mailed communication will be received is hardly persuasive with respect to notices mailed to them. In the case of notices mailed to attorneys which were not returned, it is impossible to know whether they knew where their present or former clients were located or, if they did know, whether they forwarded the notice to their present or former clients.

Thus there is presented a situation in which the counsel for the Esmor Defendants and counsel for the Brown Action plaintiffs agreed upon the form of an order for notification to the class members. There is no indication that they consulted with the attorneys for the Jama Action plaintiffs who had been actively pursuing the case in this court for two years. As events unfolded it developed that the opt-out deadline was absurdly short, and it would appear that the overwhelming majority of the class members never received the notice and, if a settlement were reached or a judgment obtained, there would be no way to locate and pay the award to the class members.

Unlike present day securities fraud class litigation and unlike many other forms of class actions there is no sophisticated or institutional plaintiff which can serve as lead class plaintiff to work with class counsel and monitor the conduct of the case and evaluate the reasonableness, fairness and adequacy of any settlement award. As a practical matter the Jama Action counsel perform this role.

In these circumstances the Esmor Defendants and counsel for the Brown Action plaintiffs have joined together to seek the invalidation of the opt-outs of the plaintiffs in the Jama Action. Both seek to persuade the court that there is a greater likelihood of a settlement if the case proceeds solely as a class action. In the event of such a class settlement with no opt-outs the Esmor Defendants would be insulated from further liability to any class member; it is likely that only a pitiful few of the 1,625 detainee class members would be locatable to receive any part of the settlement award; class counsel would be assured of payment from a fund in court. Desirable as settlement always is, this is not a scenario in which a court can feel comfortable.

The first order of business, therefore, will be to identify those members of the class that counsel in the Brown Action can now locate and to whom an award, should there be an award, can be paid.

When this information is obtained it can be determined whether the Brown Action can continue as a class action and, if it can, what kind of a settlement would be in the best interest of a class that includes a small number of locatable members and a huge number of members with whom contact is impossible. In these circumstances it would be totally impermissible to dismiss the individual actions of a group of former detainees who can be located.

Turning to the question whether the March 9, 1999 order should be amended to permit the Jama Action plaintiffs to opt-out, it will for the moment be assumed that the

Brown Action will continue as a class action. Given that assumption, the relevant factors point to granting the present motion.

■ Elemental justice requires that the Jama Action plaintiffs be permitted to pursue their action. For two years before the class notice order was entered and thereafter their counsel pursued the action with diligence, responding to extensive motions to dismiss, conducting discovery and settling the claims against the Immigration and Naturalization Service. There was no consultation with their counsel before the Esmor Defendants and counsel for the Brown Action plaintiffs submitted a consent order to the court which, it turned out, provided a grossly inadequate period to file requests for exclusion.

In addition to the inadequacy of the time for opt-outs, there was the extreme difficulty (or impossibility) of communication with the class members. This is evidenced by the failure of the notice to reach a vast majority of the class members and the difficulty Jama Action counsel had in reaching their clients to obtain formal opt-out documentation.

Counsel for Esmor Defendants and all plaintiffs' counsel in the three cases recognized and accepted this situation and worked with Magistrate Judge Hedges to adjust to the fact that the opt-out provisions of the March 9, 1999 order could not be complied with. Accordingly, no counsel voiced any objections to Magistrate Judge Hedges's December 30, 1999 order that provided that Jama and DaSilva Action counsel provide Brown Action counsel with the last known addresses of plaintiffs with whom counsel was no longer in contact so that Brown Action counsel could give them notice. Failure of such plaintiffs to opt-out would result in their being deemed class members. In the same order Magistrate Judge Hedges also ordered that at a later date he would designate a date for the submission of an opt-out form for each remaining DaSilva and Jama Action plaintiff.

On July 16, 1999 counsel for the Jama Action plaintiffs had advised the Brown Action counsel who the opt-out plaintiffs would be, supplementing the list on November 19, 1999 and December 22, 1999. A total of nine individuals were designated as opt-out plaintiffs. On December 22, 1999 Jama Action counsel advised Brown Action counsel of the names and addresses of the plaintiffs with whom they had lost contact.

The case proceeded with discovery without a date for submission of additional opt-out papers being set. No party's counsel requested further formalization of the opt-out designation until the March 5, 2003 conference before Magistrate Judge Wigenton, when Brown Action counsel and Esmor Defendants' counsel contended that it was too late to set a date and since Jama Action plaintiffs had not met the technical requirements of the June 1, 1999 date specified in the March 9, 1999 order opt-out should be denied and the Jama Action dismissed. Magistrate Judge Wigenton, to whom the case had been reassigned, completed the process contemplated by Magistrate Judge Hedges's December 30, 1999 order and specified that the opt-out forms would be effective if submitted at that time.[1]

It is true that the Magistrate Judges probably did not have jurisdiction to order a modification of the court's March 9, 1999 order. However, none of the parties objected to the procedures set forth in Magistrate Judge Hedges's December 30, 1999 order and proceeded in accordance with its terms. Under the circumstances this court would undoubtedly have ordered similar procedures had it been asked to do so.

Having acted pursuant to the order of the Magistrate Judge who was assigned to this case, an order accepted and acted upon by all counsel in all three actions, it can hardly be said that the Jama Action plaintiffs were guilty of any neglect, excusable or otherwise. However, the relevant excusable neglect fac-

---

1. The Esmor Defendants contend that "only one of the opt-out notices submitted late was fully completed, with a proper witness signature", and that, therefore, only one Jama Action plaintiff has effectively opted-out. Esmor Defendants' Brief at p. 23. However, the March 9, 1999 order requires only that "[p]ersons requesting exclusion must set forth their full name and current address." (Para 4). The absence of a witness's signature (or even the person's signature) is of no moment.

tors weigh in favor of the Jama Action plaintiff.

The Esmor Defendants claim that extension of the March 9, 1999 time limit of June 1, 1999 "would severely prejudice Esmor defendants." (Esmor Defendants' brief at p. 12), claiming that "[b]y letter dated February 13, 2003 to Magistrate Judge Wigenton, *Jama* counsel disclosed *for the first time* that they ignored this Court's March 1999 order issued almost four years earlier and had failed to obtain the required executed opt-out forms." (Esmor Defendants' Brief at p. 9) (emphasis in original). Esmor Defendants' counsel must have been forgetful or asleep. In their July 19, 1999 certification of publication and mailing class notice counsel for the Brown Action plaintiffs stated: *"By counsel in the respective actions, 7 of the 21 Jama plaintiffs and the 7 detainee plaintiffs in the DaSilva action have opted out."* (Para.O) (emphasis added). Presumably Esmor counsel read the certification. As early as November 19, 1999 at a conference before Magistrate Judge Hedges (the results of which were incorporated in his December 30, 1999 order) all counsel, including the Esmor Defendants' counsel, were made aware of the fact that scattering of the former Esmor facility detainees had made it extremely difficult or impossible to comply with the June 1, 1999 opt-out deadline established in the March 9, 1999 order. The Magistrate Judge ordered the steps previously described to meet that situation.

The Esmor Defendants' counsel knew of the circumstances and the steps taken to meet them. By December 22, 1999 they were, or should have been aware of the identities of the nine Jama Action plaintiffs who were opting out. That was the date of the last letter in which Jama Action counsel advised Brown Action counsel of the plaintiffs with whom they could make contact and who wished to opt out. There were no surprises and the case proceeded in the normal course, complicated, of course, by the fact that the plaintiffs and witnesses were so widely scattered and inaccessible. The cases were not delayed in any way by the failure to meet the formal opt-out requirements.

The Esmor Defendants assert prejudice because the existence of the Jama Action delays settlement of the Brown Action. As mentioned above a major barrier to settlement of the Brown Action is the fact that it is unknown how any settlement can be resolved on a class basis. Until that question is resolved and until it is known whether the Brown Action can continue as a class action settlement cannot be achieved.

If one accepts the proposition that the magistrate judges did not have authority to amend the March 9, 1999 order, technical compliance with the March 9 order was long delayed, i.e., almost four years. However, no one objected to the procedure which Magistrate Judge Hedges ordered; all opt-outs were identified by December 22, 1999; all but two had been identified by July 16, 1999; and no party was prejudiced by delaying compliance with the formal requirements of the original order until March 2003. Under the circumstances this was an eminently reasonable time period.

The reasons why the Jama Action plaintiffs pursued the course of action that they did are fully explained. They parallel the reasons why pursuit of the Brown Action as a class action is problematical.

Jama Action counsel relied on Magistrate Judge Hedges's December 30, 1999 order, which was acquiesced in by all counsel. This can hardly be characterized as a failure to act in good faith.

### Conclusion

The Jama Action plaintiffs' motion will be granted to amend paragraph 4 of the March 9, 1999 class notice order to permit the plaintiffs in the Jama Action designated in letters of their counsel to plaintiffs counsel in the Brown Action dated July 16, November 19 and December 22, 1999 and to permit the plaintiffs in the DaSilva Action previously identified in communications to Brown Action Counsel to opt-out of the Brown Action. By separate order and after consultation with counsel in all three cases the court will set forth requirements which counsel in the Brown Action must take to identify which class plaintiffs received a copy of the class notice and which class plaintiffs can present-

ly be located and communicated with. The court will file its own order implementing the opinion.

### ORDER

Plaintiffs in *Hawa Abdi Jama, et al. v. Esmor Correctional Services Incorporated, et al.,* (the *"Jama* Action"), having moved for an order modifying this court's class notice order of March 9, 1999 entered in *Samson Brown, et al. v. Esmor Correctional Services, Inc., et al.,* (the *"Brown* Action"), or in the alternative to consider as a report and recommendation the order issued by Magistrate Judge Wigenton on March 5, 2003 (which implemented a portion of a December 30, 1999 order of Magistrate Judge Hedges) and to adopt that order as an order of this court; and the court having considered the submissions and arguments in support of, and in opposition to said motion; and for the reasons set forth in an opinion of even date;

It is on this day of June, 2003, ORDERED as follows:

1. Paragraph 4 of this Court's class notice order (in the *Brown* Action) dated March 9, 1999 is amended to provide that requests for exclusion ("opt-outs") from the plaintiff class in the *Brown* action shall be deemed to be effective if they were provided to counsel for the class on or before March 20, 2003. The requests shall be deemed valid notwithstanding the fact that a plaintiff's signature was not accompanied by the signature of a witness.

2. Without limiting the generality of the foregoing, Hennessey Hunt and the following plaintiffs in the *Jama* action, have validly opted out of the *Brown* Action:

Hennessey Hunt

Hawa Abdi Jama

Anantharajah Jeyakumar

Abu Bakar

Cecilia Kou Jeffrey

Abraham Kenneth

Dennis Raji

Agatha Serwaa

Shamimu Nanteza

Sarah Yeteh

3. The plaintiffs in *Joaquin Da Silva, et al. v. Esmor Correctional Services Incorporated, et al.,* (the *"Da Silva* action") who submitted opt-out requests to *Brown* Action counsel prior to March 20, 203 shall be deemed to have validly opted out.

4. A hearing will be held on June 23, 2003 commencing at 9:30 a.m. concerning actions to be taken to determine which of the class plaintiffs can be located.